Gary F. Eisenberg, Esq.
HERRICK, FEINSTEIN LLP
One Gateway Center
Newark, New Jersey 07102
(973) 274-2000
Co-Counsel for Plaintiff

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In Re:<br><br>WALSH SECURITIES, INC.,<br><br>Debtor. | Case No.: 10-44845<br><br>Hon. Novalyn L. Winfield |

**OBJECTION OF CHEROKEE EQUITIES TO MOTION RE AUTHORIZATION TO SUBMIT RETENTION APPLICATION UNDER SEAL BY WALSH SECURITIES, INC. AS TO MAGNANINI & STONE LLP**

Cherokee Equities, LLC ("Creditor"), by way of objection to the Application (the "Application") of the Debtor Walsh Securities, Inc. (the "Debtor") for entry of an Order authorizing the Debtor to file portions of its retention motion in support of retention of the law firm of Stone & Magnanini LLLP ("Proposed Firm") under seal, respectfully shows the Court as follows:

1. On November 9, 2010, the Debtor filed its Chapter 11 Petition in this case. The Debtor continues as a debtor-in-possession in this case. No Creditors Committee has been appointed.

2. Indeed, the Debtor's Schedules list only five creditors. Creditor is, upon information and belief, one of only three non-affiliated creditors of the Debtor and, according to

1

the Debtor's schedules, holds over 83% of the non-affiliate claims against the Debtor. The other two non-affiliate creditors appear to be professional firms.

3. Creditor previously held a judgment against the Debtor that was restructured pursuant to a settlement.[1]

4. In connection with the Settlement, Walsh Securities, as borrower, executed a note in favor of the Lender for $900,000 (the "Note"). Robert Walsh and Lorraine Walsh, affiliates of the Debtor, were both guarantors of the Note as described below. A true and correct copy of the Note is annexed hereto as Exhibit "A."

5. Under the terms of the Note, the Walshes were to make quarterly payments and repay the Note within two years. If the Lender did not receive full payment of any amount within five days of it being due, a late charge of 5% of the overdue principle and interest would be charged. See Note (Ex. A hereto), at §6(A). The Note also provides that the Lender has a right to recoup all of its costs and expenses in enforcing the Note, including reasonable attorneys fees. See Note (Ex. A hereto), at §6(E).

6. To secure and guarantee the Note, the Walshes executed a third mortgage on their home located at 46 Laura Lane, Morristown, New Jersey (as more particularly described in the Mortgage, the "Property"), in favor of the Lender (the "Mortgage"). A true and correct copy of the Mortgage is annexed hereto as Exhibit "B."

7. The Debtor's schedules list one asset of the Debtor, a lawsuit entitled Walsh Securities, Inc. v. Cristo Property Management (Civil Action No. CV-97-3496) (the "RICO ACTION"). Creditor notes that this RICO ACTION has been pending for years.

---

[1] The settlement was made pursuant to a settlement agreement whose terms are confidential. The date of the settlement agreement was July 9, 2007. The Creditor is willing to submit a copy of the settlement agreement under seal if required by the Court.

HF 6204987v.1 #13923/0001

8. Creditor acknowledges that Mr. Magnanini at the different firms at which he is employed has served as counsel for the Debtor for the RICO ACTION. However, because the RICO ACTION in the Debtor's only scheduled asset and Creditor is the principal non-affiliated Creditor of the Debtor, Creditor is concerned that the Debtor is pursuing litigation strategy without regard to its obligation to Creditor.

9. The economics of the RICO ACTION are paramount. Understanding the fee arrangement proposed between the Debtor and the Proposed Firm in this RICO ACTION is essential for the Creditor to understand how the conduct of the RICO ACTION is affecting Creditor's prospect of recovery as a Creditor.

10. To put it simply, there is a potential that Proposed Firm is a potential competing creditor of Debtor. This may incentivize Proposed Firm to conduct the RICO ACTION not primarily with a view towards recovery for the benefit of the unaffiliated creditors of the Debtor, but rather with a view towards recovering fee claims of the Proposed Firm. This would set up a conflict situation. It is unfair for Creditor to have the potential recovery under the RICO ACTION be compromised or jeopardized because of the fee arrangements that are concealed from it with respect to Proposed Firm.

11. The filing of the application under seal causes the Creditor concern that the Proposed Firm is seeking to have its fee claims (both pre-and post-petition) be deemed a priority claim over all others, including Creditor's claim, with regard to the first collection of funds in the RICO ACTION.

12. Proposed Firm has proposed to "bill for its services on the terms set forth in the Application, under seal...." See Affidavit of Disinterestedness of Robert Magnanini dated December 9, 2010. This creates a concern that Proposed Firm seeks to have all previous billings

classified as a priority claim. This would be improper. To the extent that Proposed Firm is a creditor of the Debtor, its claim should be a general unsecured claim with no priority over other general unsecured creditors.

13. In addition, filing the Application under seal will prevent the creditors from understanding, for the Proposed Firm's principal attorney who asserts he has been working on this case for 13 years, how much that attorney has received in fees from the RICO LITIGATION and how much remains outstanding. This is necessary to assess what may be the real incentives for the Debtor and the Proposed Firm in pursuing the RICO ACTION.

14. Creditor notes that, while the Debtor portrays the RICO ACTION as lucrative, Creditor has yet to see a cent of recovery from it.

15. This leads to concern that the Debtor's strategy with respect to the RICO ACTION is to continue to delay, obfuscate and conceal the ultimate potential recoveries in the RICO ACTION and to act with callous disregard to the first proceeds to be recovered (because, subject to whatever fee arrangements may be approved regarding Proposed Firm and the RICO ACTION, after payment of allowed fees, the proceeds must be paid to Creditor before the Debtor can receive any distributions). Creditor's experience with the Debtor to date has been that the Debtor conducts the RICO ACTION, so long as Creditor is likely to be a significant beneficiary, in a way so as to try to "wear down" the Creditor so as to extract a discounted settlement from Creditor (which would represent a further discount from the settlement in to which the Debtor and Creditor previously entered). Such a tactic would be unfair and unconsciousable.

16. Accordingly, Creditor respectfully requests that Creditor be given full access to, disclosure of and ability to review any and all of the papers being submitted in connection with the Application so that Creditor can be fully apprised of how the RICO

ACTION is being conducted   Creditor also requests a reasonable time period to prepare and submit any objection to the Application that Creditor believes is warranted.  If the Application is filed under seal, how can the Creditor meaningfully evaluate it, when the Application concerns pursuit of recovery on account of the Debtor's only asset?

17. Creditor is ready, willing and able to bound by appropriate confidentially restrictions so as to preserve the legitimate confidentiality concerns of the Debtor with respect to the RICO ACTION.

For the foregoing reasons, and to be supplemented at oral argument, Creditor respectfully requests that the Court not permit the Application to be filed under seal, that the Creditor be given a reasonable opportunity to object to the Application and that no pre-petition fees accrued by the Proposed Firm be awarded priority over any general unsecured claims.

        HERRICK, FEINSTEIN LLP
        Attorneys for Cherokee Equities, LLC


        By: __/s/ Gary F. Eisenberg_____
            GARY F. EISENBERG

Dated:  December 13, 2010

HF 6204987v.1 #13923/0001