Stipulation Settlement Agreement - Walsh v Windsor Cherokee - 6jul07

# Exhibit S: Note from Walsh Securities

## Promissory Note
(Walsh Securities to Cherokee Equities)

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

This Promissory Note (this "**NOTE**") is effective as of the 6th day of July 2007 (the "**EFFECTIVE DATE**"), by and between Walsh Securities, Inc., a Delaware corporation, c/o Robert Magnanini, Esq., Boies Schiller & Flexner, 150 JFK Parkway, Short Hills, NJ 07078 (hereinafter referred to as "**WALSH SECURITIES**" or the "**BORROWER**"), and Cherokee Equities, LLC, P.O. Box 6357, East Brunswick, NJ 08816 (herein "**CHEROKEE**" or "**LENDER**"), and together herein "the **PARTIES**".

### 1. BORROWER'S PROMISE TO PAY

In return for a loan and other consideration that has been received by the BORROWER(S), the receipt and sufficiency of which is acknowledged, BORROWER promises to pay Nine Hundred Thousand (US **$900,000.00**) U.S. Dollars (this amount is called the "**PRINCIPAL**"), plus interest, to the order of the LENDER. The LENDER is **CHEROKEE EQUITIES, LLC**, organized and existing under the laws of New Jersey.

This NOTE has been guaranteed by Robert and Lorraine Walsh. Said guarantee is evidenced by a Balloon Mortgage Note executed simultaneously with this NOTE. Both instruments represent one and the same financial obligation, the total PRINCIPAL amount of which is $900,000.00, and CHEROKEE EQUITIES, LLC hereby acknowledges that it is only entitled to the payment of $900,000 plus interest on both this note and on the Guarantee Note attached to the SETTLEMENT AGREEMENT as Exhibit E.

The BORROWER understands that CHEROKEE may transfer this NOTE, except to defendants in the WALSH SECURITIES RICO LITIGATION. CHEROKEE or anyone who takes this NOTE by transfer and who is entitled to receive payments under this NOTE is called the "**NOTE HOLDER**".

### 2. INTEREST

"**INTEREST**" will be charged on unpaid PRINCIPAL until the full amount of PRINCIPAL has been paid. BORROWER(S) will pay INTEREST at a yearly rate of Ten (10.00%) Percent. The interest rate required by this Section 2 is the rate BORROWER(S) will pay both before and after any default described in Section 6(B) of this NOTE.

The payments above are for INTEREST. The amount of PRINCIPAL remaining owing at any time is called the "**UNPAID PRINCIPAL BALANCE**" or "**UPB**". Notwithstanding the uneven INTEREST payments shown herein, INTEREST on the UPB will accrue at the daily rate of .0002777% (for example, $246.57534 per day if the UPB was $900,000). In other words, 10% annualized, divided by 360 days until "good funds" are delivered to CHEROKEE.

### 3. PAYMENTS

Time, Place and Amounts of Payments:

BORROWER(S) will make payments every ninety (90) days following the EFFECTIVE DATE, without demand or set-off for any reason, as follows:

Stipulation Settlement Agreement - Walsh v Windsor Cherokee - 6jul07

```
2072            Payments 1 and 2 of $10,000 each,
2073            Payment 3 of $22,500,
2074            Payments 4 and 5 of $35,000 each, and
2075            Payments 6, 7 and 8 of $22,500 each.
2076
2077        The above INTEREST payments are illustrative only.  INTEREST payments will cease when the
2078        UPB is paid off in full.  When the UPB is paid, INTEREST that has accrued as per Clause 2 shall be
2079        due and calculated on a pro rata basis to the day "good funds" are received by LENDER.
2080
2081        BORROWER(S) will make these payments as required herein until BORROWER(S) has/have paid
2082        all of the PRINCIPAL and INTEREST and any other charges described herein that BORROWER(S)
2083        may owe under this NOTE.
2084
2085        All payments will be applied to INTEREST before PRINCIPAL.
2086
2087        If, on the two (2) year anniversary of the EFFECTIVE DATE, the BORROWER(S) still owes
2088        amounts under this NOTE, BORROWER(S) will pay all of those amounts in full on that date, which
2089        is called the "MATURITY DATE".  (See extension option in Clause 4.)
2090
2091        BORROWER(S) will make payments by postal mail to: P.O. Box 6357, E. Brunswick, NJ 08816, by
2092        messenger or in person to: C-2 Brier Hill Court, East Brunswick, NJ 08816, or at such other
2093        address as the NOTE HOLDER designates.
```

### 2094  4. BORROWER'S RIGHT TO PREPAY & EXTEND

```
2095        BORROWER(S) has the right to make payments of PRINCIPAL at any time before they are due.  A
2096        payment of PRINCIPAL only, is known as a "PREPAYMENT".  When BORROWER(S) makes a
2097        PREPAYMENT, BORROWER(S) will tell the NOTE HOLDER in writing that BORROWER(S) is/are doing
2098        so.
2099
2100        BORROWER(S) may make a full PREPAYMENT or partial PREPAYMENT without paying any prepayment
2101        charge. The NOTE HOLDER will use all of BORROWER'S(S) PREPAYMENTS to reduce the amount of
2102        PRINCIPAL that BORROWER owes(S) owe under this NOTE.  If BORROWER makes(S) make a partial
2103        PREPAYMENT there will be no changes in the due date or in the amount or due date(s) of
2104        BORROWER'S(S) payments unless the NOTE HOLDER agrees in writing to those changes.
2105
2106        If the BORROWER(S) is/are not in DEFAULT at the MATURITY DATE, BORROWER may extend the term
2107        of this NOTE for one (1) additional year, on all of the same terms and conditions, by written notice to
2108        LENDER at least thirty (30) days before the MATURITY DATE, coupled with the payment in "good
2109        funds" (certified check etc.) of a Twenty-Five Thousand ($25,000.00) Dollar fee, which is not a
2110        payment against the INDEBTEDNESS but rather an additional fee to LENDER in consideration of
2111        extending the term.  INTEREST payments during any extension will be $22,500 quarterly.
```

### 2112  5. LOAN CHARGES

```
2113        If a law, which applies to this NOTE and which sets maximum loan charges, is finally interpreted so
2114        that the INTEREST or other NOTE charges collected or to be collected in connection with this NOTE
2115        exceed the permitted limits, then: (i) any such NOTE charge shall be reduced by the amount
2116        necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from
2117        BORROWER(S) which exceeded permitted limits will be refunded to BORROWER(S). The NOTE
2118        HOLDER may choose to make this refund by reducing the PRINCIPAL owed by the BORROWER(S)
2119        under this NOTE or by making a direct payment to BORROWER(S). If a refund reduces PRINCIPAL, the
2120        reduction will be treated as a partial PREPAYMENT.
```

### 2121  6. BORROWER'S FAILURE TO PAY AS REQUIRED

```
2122            (A) Late Charges For Overdue Payments.

2123            If the NOTE HOLDER has not received the full amount of any payment by the end of Five (5)
2124            calendar days after the date it is due, BORROWER(S) will pay a late charge to the NOTE HOLDER.
2125            The amount of the charge will be 5.00% of BORROWER'S(S) overdue payment of PRINCIPAL and
```

Stipulation Settlement Agreement - Walsh v Windsor Cherokee - 6jul07

INTEREST. BORROWER(S) will pay this late charge promptly, but only once on each late payment.

(B) Default

If BORROWER(S) does not pay the full amount of each payment on the date it is due, BORROWER(S) will be in "**DEFAULT**".

(C) Notice of Default.

If BORROWER(S) is/are in DEFAULT, the NOTE HOLDER may send BORROWER(S) a written notice telling BORROWER(S) that if BORROWER(S) do not pay the overdue amount by a certain date, the NOTE HOLDER may require BORROWER(S) to pay immediately the full amount of PRINCIPAL which has not been paid and all the INTEREST that BORROWER(S) owe on that amount. This is called "**ACCELERATION**". That date must be at least 30 days after the date on which the notice is delivered or mailed to BORROWER.

In the event that the BORROWER does not cure said DEFAULT, it shall be a DEFAULT under this NOTE and the SECURITY INSTRUMENT(S).

(D) No Waiver By NOTE HOLDER.

Even if at a time when BORROWER is(S) are in DEFAULT, the NOTE HOLDER does not require BORROWER(S) to pay immediately in full as described above, the NOTE HOLDER will still have the right to do so if BORROWER is(S) are in DEFAULT at a later time.

(E) Payment of NOTE HOLDER's Costs and Expenses.

If the NOTE HOLDER has required BORROWER(S) to pay immediately in full as described above (ACCELERATION), the NOTE HOLDER will have the right to be paid back by BORROWER(S) for all of its costs and expenses in enforcing this NOTE to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to BORROWER(S) and GUARANTORS under this NOTE, will be given by delivering it or by mailing it by first class mail to BORROWER(S) at the Property Address herein, or at a different address if BORROWER(S) gives the NOTE HOLDER a notice of BORROWER'S(S) different address.

Any notice that must be given to the NOTE HOLDER under this NOTE will be given by mailing it by first class mail to the NOTE HOLDER at the address stated in Section 3 herein or at a different address if BORROWER is(S) are given a notice of that different address.

The LENDER shall also provide notice of any default to the GUARANTORS at the address given under this Note.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this NOTE, each person is fully, personally and severally obligated to keep all of the promises made in this NOTE, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this NOTE is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this NOTE, is also obligated to keep all of the promises made in this NOTE. The NOTE HOLDER may enforce its rights under this NOTE against each person individually or against all of the BORROWER(S) together. This means that any one of the BORROWER(S) may be required to pay all of the amounts owed under this NOTE.

This NOTE shall be governed by the laws of the State of New Jersey.

This NOTE may not be modified other than by a written instrument.

Stipulation Settlement Agreement - Walsh v Windsor Cherokee - 6jul07

### 9. WAIVERS

BORROWER(S) and any other person who has obligations under this NOTE, waives the rights of presentment and notice of dishonor. **"PRESENTMENT"** means the right to require the NOTE HOLDER to demand payment of amounts due. **"NOTICE OF DISHONOR"** means the right to require the NOTE HOLDER to give notice to other persons that amounts due have not been paid.

### 10. MORTGAGE / SECURITY INSTRUMENT

To further secure the repayment of this obligation, Robert and Lorraine Walsh have consented to the issuance of a SECURITY INSTRUMENT on their personal residence at 46 Laura Lane, Morristown, New Jersey, also known as Tax Block 11, Lot 5 in Harding Township, and Block 361, Lots 76 and 77 in Morris Township, Morris County, NJ (herein the **"MORTGAGE"** or **"SECURITY INSTRUMENT"**).

NOW THEREFORE, intending to be legally bound, each PARTY executes this NOTE as of the date shown next to their signature.

7/7/07
Date Signed

**Robert C. Walsh, President**

Acknowledgement of Robert C. Walsh Signature

I CERTIFY that on the 7 day of July 2007, personally before me came **Robert C. Walsh**, and stated and proved to my satisfaction that he is:

(a) The person identified within the herein NOTE;
(b) The maker(s) of this NOTE;
(c) Authorized to, and did, execute this NOTE as the President of Walsh Securities, Inc., as authorized by and on the behalf of the corporation named; and
(d) Executed this NOTE voluntarily, without duress, and for the consideration stated.

AMY WAGNER,
ATTORNEY-AT-LAW
NJ 0442-2002