# Exhibit F: Walsh Mortgage on 46 Laura Lane

## Mortgage

THIS **MORTGAGE** is a security instrument given on the 6th day of July, 2007. The MORTGAGOR is Robert C. Walsh and Lorraine C. Walsh (husband and wife), whose address is 46 Laura Lane, Morristown, NJ 07960 (herein the "**MORTGAGOR**" or "**MORTGAGORS**" or "**WALSH SECURITIES**").

This MORTGAGE is given to Cherokee Equities, LLC, whose address is PO Box 6357, East Brunswick, NJ 08816 (herein "**CHEROKEE**" or the "**MORTGAGEE**"), its successors or assigns.

In this MORTGAGE, the terms "you", "your" and "yours" refer to the **MORTGAGORS**. The terms "we," "us", "our" or 'CHEROKEE" refer to the MORTGAGEE.

MORTGAGORS have given this MORTGAGE pursuant to the terms and conditions of that certain Stipulation of Settlement and Mutual General Release (the "SETTLEMENT AGREEMENT"). Pursuant to the SETTLEMENT AGREEMENT, MORTGAGORS have executed and delivered that certain Mortgage Promissory Note in the original principal amount of $900,000.00 (the "NOTE") to evidence their agreement to repay a debt (the "DEBT") on the terms and conditions set forth, and as more fully described, in the SETTLEMENT AGREEMENT, the NOTE and the MORTGAGE. The NOTE is dated the same date as this MORTGAGE, which provides for quarterly interest payments, with the full DEBT, if not paid earlier, due and payable **Two (2) Years** after the date this MORTGAGE is signed.

This MORTGAGE secures to CHEROKEE: (a) the repayment of the DEBT evidenced by the NOTE, with interest, and all renewals, extensions and modifications of the NOTE; (b) the payment of all other sums, with interest, advanced under this MORTGAGE to protect the security of this MORTGAGE, except payment of the insurance policy purchased by CHEROKEE; and (c) the performance of your covenants and agreements under this MORTGAGE and the NOTE.

This MORTGAGE and the NOTE secured thereby are subject to modification (including changes in the interest rate, the due date, and other terms and conditions) as defined in New Jersey Statutes Annotated 46:9-8.1 to 46:9 -8.4; and upon such modification, shall have the benefit of the lien priority provisions of that law. For this purpose, you hereby MORTGAGE, grant and convey to CHEROKEE and our successors and assigns the **PROPERTY** (defined herein) located in MORRIS COUNTY, NEW JERSEY, and more fully described below:

Property Description: 46 Laura Lane, Morristown

TRACT ONE (of 2)

Property situated partly in the Township of Morris and partly in the Township of Harding, Morris County, New Jersey:

BEGINNING at a point in the southerly line of Laura Drive distant southerly and westerly along the various courses of same 1,137.06 feet from the intersection of the southerly line of Laura Lane and the southwesterly line of Eagle Nest Road and running thence;

(1)    South 53°23' 17" West 120.02 feet; thence
(2)    South 01°04'30" West 170.00 feet; thence
(3)    North 84°11'44" West 896.97 feet; thence
(4)    North 28°17'49" East 338.19 feet; thence
(5)    South 89°11'44" East 770.14 feet to the westerly line of Laura Lane; thence
(6)    Southerly along the same on a curve to the left having a radius 175.00 feet; an arc distance of 88.85
    feet to the Point and Place of BEGINNING.

TRACT TWO (of 2)

Property situated in the Township of Morris, Morris County, New Jersey:

BEGINNING at a point in the westerly line of Laura Lane at the southerly corner of Lot 75 on the map mentioned below, and running thence;

(1)  Southerly along said line of Laura Lane on a curve bearing to the left having a radius of 175.00 feet, an arc distance of 136.67 feet; thence
(2)  North 89°11'44" West 253.00 feet; thence
(3)  North 17°38'01" East 167.48 feet; thence
(4)  South 79°24'21" East 178.08 feet to the Point and Place of BEGINNING.

BEING **Lot 76 in Block 361** on a map entitled "Section Five, Rolling Hill at Blackberry" filed in the Morris County Clerk's Office on May 31, 1983 as Map No. 4176.

The above descriptions (Tracts 1 and 2) are in accordance with a survey by Frederick C. Meola dated December 20, 1993.

TOGETHER with an **easement** for sanitary sewer purposes as set forth in deed recorded in Deed Book 3139 Page 155.

BEING **a portion** of the same premises conveyed to Samuel R. Masucci, Jr. and Dianne M. Masucci, his wife by deed from Harvey Caplan, dated January 12, 1988 and recorded January 15, 1988 in **Deed Book 2993, Page 343**.

BEING known as **Lot 5, Block 11** on the Harding Township tax map, and **Lots 76 and 77, in Block 361**, on the Morris Township tax map.

SUBJECT TO easements, restrictions and covenants of record, state and municipal regulations and ordinances and such state of facts as an accurate survey may disclose.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this MORTGAGE. All of the foregoing is referred to in this MORTGAGE as the "**PROPERTY**." WALSH SECURITIES'S rights and interests in the PROPERTY are herein the "**ESTATE**").

YOU COVENANT that you are lawfully seized of the ESTATE hereby conveyed and have the right to mortgage, grant and convey the PROPERTY, and that the PROPERTY is unencumbered, except for encumbrances of record. You warrant and will defend generally the title to the PROPERTY against all claims and demands, subject to any encumbrances of record.

WALSH SECURITIES and CHEROKEE covenant and agree as follows:

1. **Payment of Principal, Interest and Other Charges.** WALSH SECURITIES shall pay when due the principal of, and interest owing under the NOTE and all other charges due under the NOTE.

2. **Payments of Taxes and Insurance.** WALSH SECURITIES will pay, when due, all taxes, assessments, leasehold payments or ground rents (if any), and hazard insurance on the PROPERTY and Mortgage insurance (if any).

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by CHEROKEE under the NOTE and Section 1 will be applied by us as permitted under the NOTE.

4. **Prior Mortgages; Charges; Liens.** You shall perform all of your obligations under any Mortgage, Deed of Trust, or other Security Instruments with a lien which has priority over this MORTGAGE, including your covenants to make payments when due. You shall pay all taxes, assessments, charges, fines and impositions attributable to the PROPERTY which may attain priority over this MORTGAGE and leasehold payments or ground rents, if any. Upon our request, you shall promptly furnish to us all amounts to be paid under this paragraph and receipts evidencing any such payments you make directly. You shall promptly discharge any lien (other than a lien disclosed to us in the Affidavit of Title associated with this MORTGAGE, or in any title report we obtained, which has priority over this MORTGAGE.

5. **Hazard Insurance.** You shall keep the PROPERTY insured against loss by fire, hazards included within the term "extended coverage" and any hazards, including floods or flooding,

for which we require insurance. This insurance shall be maintained in the amounts and for the periods that we reasonably require. You may choose any insurer reasonably acceptable to us. Insurance policies and renewals shall be acceptable to us and shall include a standard mortgage clause. If we require, you shall promptly give us all receipts of paid premiums and renewal notices.

If you fail to maintain coverage as required in this section, you authorize us to obtain such coverage as we in our sole discretion determine appropriate to protect our interest in the PROPERTY in accordance with the provisions of Section 7. You understand and agree that any coverage we purchase may cover only our interest in the PROPERTY and may not cover your interest in the PROPERTY or any personal property therein. You also understand and agree that the premium for any such insurance may be higher than the premium you would pay for such insurance.

You shall promptly notify the insurer and us of any loss. We may make proof of loss if you do not promptly do so. We may also, at our option and on your behalf, adjust and compromise any claims under the insurance, give releases or acquittances to the insurance company in connection with the settlement of any claim and collect and receive insurance proceeds. You appoint us as your attorney-in-fact to do all of the foregoing, which appointment you understand and agree is irrevocable, coupled with an interest with full power of substitution and shall not be affected by your subsequent disability or incompetence.

Insurance proceeds shall be applied to restore or repair the Property damaged, if restoration or repair is economically feasible and our security would not be lessened. Otherwise, insurance proceeds shall be applied to sums secured by this MORTGAGE, whether or not then due, with any excess paid to you. If you abandon the PROPERTY, or do not answer within 30 days our notice to you that the insurer has offered to settle a claim, then we may collect and use the proceeds to repair or restore the PROPERTY or to pay sums secured by this MORTGAGE, whether or not then due. The 30-day period will begin when notice is given. Any application of proceeds to principal shall not require us to extend or postpone the due date of monthly payments. If we acquire the PROPERTY at a forced sale following your default, your right to any insurance proceeds resulting from damage to the PROPERTY prior to the acquisition shall pass to us to the extent of the sums secured by this MORTGAGE immediately prior to the acquisition.

You shall not permit any condition to exist on the PROPERTY which would, in any way, invalidate the insurance coverage on the PROPERTY.

6. **Preservation and Maintenance of Property; Leaseholds.** You shall not destroy, damage or substantially change the PROPERTY, allow the PROPERTY to deteriorate, or commit waste. If this MORTGAGE is on a leasehold, you shall comply with the lease. If you acquire fee title to the PROPERTY, the leasehold and fee title shall not merge unless we agree to the merger in writing.

7. **Protection of Our Rights in the Property; MORTGAGE Insurance.** If you fail to perform the covenants and agreements contained in this MORTGAGE, or there is a legal proceeding that may significantly affect our rights in the PROPERTY (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then we may do, and pay for, anything necessary to protect the value of the PROPERTY and our rights in the PROPERTY. Our actions may include paying any sums secured by a lien which has priority over this MORTGAGE or any advance under the NOTE or this MORTGAGE, appearing in court, paying reasonable attorneys' fees, paying any sums which you are required to pay under this MORTGAGE and entering on the PROPERTY to make repairs. We do not have to take any action we are permitted to take under this paragraph. Any amounts we pay under this paragraph shall become additional debts you owe us and shall be secured by this MORTGAGE. These amounts shall bear interest from the disbursement date at the rate established under the NOTE and shall be payable, with interest, upon our request. If we required mortgage insurance as a condition of accepting the NOTE secured by this MORTGAGE, you shall pay the premiums for such insurance until such time as the requirement for the insurance terminates.

Stipulation Settlement Agreement - Walsh v Windsor Cherokee - 6jul07

8. **Inspection.** We may make entries in and upon the PROPERTY to inspect same at any reasonable time and upon reasonable notice ONLY UPON DEFAULT.

9. **Condemnation.** The proceeds of any award for damages, direct or consequential, in connection with any condemnation or other taking of any part of the PROPERTY, or for conveyance in lieu condemnation, are hereby assigned and shall be paid to us. If the PROPERTY is abandoned, or if, after notice by us to you that the condemnor offers to make an award or settle a claim for damages, you fail to respond to us within 30 days after the date the notice is given, we are authorized to collect and apply the proceeds, at our option, either to restoration or repair of the PROPERTY or to the sums secured by this MORTGAGE, whether or not then due. Unless we and you otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments payable under the NOTE and paragraph 1 or change the amount of such payments.

10. **You Are Not Released; Forbearance by Us Not a Waiver.** Extension of time for payment or modification of amortization of the sums secured by this MORTGAGE granted by us to you or any of your successors in interest shall not operate to release your liability or the liability of your successors in interest. We shall not be required to commence proceedings against any successor in interest, refuse to extend time for payment or otherwise modify amortization of the sums secured by this MORTGAGE by reason of any demand made by you or your successors in interest. Our forbearance in exercising any right or remedy shall not waive or preclude the exercise of any right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this MORTGAGE shall bind and benefit your successors and permitted assigns. Your covenants and agreements shall be joint and several. Anyone who co-signs this MORTGAGE but does not execute the NOTE: (a) is co-signing this MORTGAGE only to mortgage, grant and convey such person's interest in the PROPERTY; (b) is not is personally obligated to pay the NOTE, but is obligated to pay all other sums secured by this MORTGAGE; and (c) agrees that we and anyone else who signs this MORTGAGE may agree to extend, modify, forbear or make any accommodations regarding the terms of this MORTGAGE or the NOTE without such person's consent.

12. **Loan Charges.** If the DEBT and NOTE secured by this MORTGAGE is subject to a law which sets maximum DEBT charges, and that law is finally interpreted so that the interest or other charges collected or to be collected in connection with the DEBT exceed the permitted limits, then: (a) any such charge(s) shall be reduced by the amount necessary to reduce the charge(s) to the permitted limit; and (b) any sums already collected from you which exceed permitted limits will be refunded to you. We may make this refund by reducing the principal owed under the NOTE or by making a direct payment to you. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the NOTE.

13. **Notices.** Unless otherwise required by law, any **NOTICE** provided for in this MORTGAGE, whether to you from us, or to us from you, shall be sent by certified class mail, return receipt, to the address shown herein, or as changed from time to time upon NOTICE.

14. **Governing Law; Severability.** The extension of credit secured by this MORTGAGE is governed by federal law, which for the purposes of 12 USC § I463(g) incorporates New Jersey law. In the event that any provision or clause of this MORTGAGE or the NOTE conflicts with applicable law, such conflict shall not affect other provisions of this MORTGAGE or the NOTE which can be given effect without the conflicting provision. To this end the provisions of this MORTGAGE and the NOTE are declared to be severable.

15. **Transfer of the Property.** If all or any part of the PROPERTY or any interest in it is sold or transferred without our prior written consent, we may, at our option, require immediate payment in full of all sums secured by this MORTGAGE. However, this option shall not be exercised by us if exercise is prohibited by federal law as of the date of this MORTGAGE.

16. **Sale of Note; Change of Loan Servicer.** The NOTE or a partial interest in the NOTE (together with this MORTGAGE) may be sold one or more times without prior notice to you. A

sale may result in a change in the entity (known as the "**LOAN SERVICER**") that collects payments due under the NOTE and this MORTGAGE. There also may be one or more changes of the LOAN SERVICER unrelated to the sale of the NOTE. If there is a change of the LOAN SERVICER, you will be given written notice of the change as required by applicable law. The notice will state the name and address of the new LOAN SERVICER and the address to which payments should be made. The notice will also contain any information required by applicable law.

17. **Hazardous Substances.** You shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the PROPERTY. You shall not do, nor allow anyone else to do, anything affecting the PROPERTY that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the PROPERTY of Hazardous Substances in quantities that are generally recognized to be appropriate to normal residential uses and to maintenance of the PROPERTY. You shall promptly give us written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the PROPERTY and any Hazardous Substance or Environmental Law of which you have actual knowledge. If you learn or are notified by any government or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the PROPERTY is necessary, you shall promptly take all necessary remedial actions in accordance with Environmental Law. As used in this MORTGAGE, "Hazardous Substances" are those substances defined as toxic or hazardous substances defined by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this MORTGAGE, "Environmental Law" means federal laws or laws of the jurisdiction where the PROPERTY is located that relate to health, safety or environmental protection.

18. **Acceleration; Remedies.** We shall give you notice prior to acceleration following your breach of any covenant or agreement in this MORTGAGE (but not prior to acceleration under Section 15 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 15 days from the date the notice is given to you, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this MORTGAGE, foreclosure by judicial proceeding and sale of the PROPERTY. The notice shall further inform you of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense you may have to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, we may, at our option, require immediate payment in full of all sums secured by this MORTGAGE without further demand and may foreclose this MORTGAGE by judicial proceeding. We shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 18, including, but not limited to, reasonable attorneys' fees as permitted by the applicable law (which fees shall be allowed and paid as part of the decree of judgment), and costs of title evidence.

19. **Discontinuance of Enforcement.** Notwithstanding our acceleration of the sums secured by this MORTGAGE under the provisions of Section 18, we may, in our sole discretion and upon such conditions as we in our sole discretion determine, discontinue any proceedings begun to enforce the terms of this MORTGAGE.

20. **Release.** Upon payment of all sums secured by this MORTGAGE, we will cancel this MORTGAGE. If we are requested to record the release of this MORTGAGE, you will pay all costs of recordation, if any.

21. **Additional Charges.** You agree to pay reasonable charges as allowed by law in connection with the servicing of this loan including, without limitation, the costs of obtaining tax searches and subordinations. Provided, however, that nothing contained in this section is intended to create and shall not be construed to create any duty or obligation by us to perform any such act, or to execute or consent to any such transaction or matter, except a release of the MORTGAGE upon full repayment of all sums secured thereby.

Stipulation Settlement Agreement - Walsh v Windsor Cherokee - 6jul07

**22. Waiver.** No waiver by us at any time of any term, provision or covenant contained in this MORTGAGE or in the NOTE secured hereby shall be deemed to be or construed as a waiver of any other term, provision or covenant or of the same term, provision of covenant at any other time.

**23. No Claim of Credit for Taxes.** You will not make deduction from or claim credit on the principal or interest secured by this MORTGAGE by reason of any governmental taxes, assessments or charges. You will not claim any deduction from the taxable value of the PROPERTY by reason of this MORTGAGE.

**24. Riders to this MORTGAGE.** If one or more riders are executed by you and recorded together with this MORTGAGE, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this MORTGAGE as if the rider(s) were a part of this MORTGAGE.

**25. Waiver of Homestead; Dower and Curtsey** When applicable, and as permitted by law, both MORTGAGORS hereby waive all rights of homestead in the PROPERTY and relinquishes all rights of dower and curtsey in the PROPERTY.

BY SIGNING BELOW, You accept and agree to the terms and covenants contained in this MORTGAGE and in any rider(s) executed by you and recorded with it.

07/07/07
Date Signed

**Robert C. Walsh** (SSN ends 6628)        Seal

NOTARY ACKNOWLEDGMENT:

State of New Jersey
County of ESSEX

On this 7 day of JULY, 2007 before me, the undersigned, a Notary Public in and for said State, personally appeared **Robert C. Walsh**, personally known to me or proven to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same as his voluntary act, without duress.

AMY WAGNER, ATTORNEY-AT-LAW
NJ 04442-2002

7/7/07
Date Signed

**Lorraine Q. Walsh** (SSN ends 5844)        Seal

NOTARY ACKNOWLEDGMENT:

State of New Jersey
County of ESSEX

On this 7 day of JULY, 2007 before me, the undersigned, a Notary Public in and for said State, personally appeared **Lorraine Walsh**, personally known to me or proven to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same as her voluntary act, without duress.

AMY WAGNER, ATTORNEY-AT-LAW
NJ 04442-2002

The remainder of this page is intentionally blank