HERRICK, FEINSTEIN LLP
Gary Eisenberg
One Gateway Center
Newark, New Jersey 07102
(973) 274-2000
Attorneys for Cherokee Equities, LLC

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>WALSH SECURITIES, INC.,<br><br>Debtor. | In Proceedings Under Chapter 11 of the United States Bankruptcy Code<br><br>Case No. 10-44845 (NLW)<br><br>Hearing Date: April 4, 2011, at 9:00 a.m. |

**CERTIFICATION OF JAY WOLFKIND IN SUPPORT OF MOTION OF CHEROKEE EQUITIES, LLC, FOR AN ORDER MODIFYING THE AUTOMATIC STAY**

JAY WOLFKIND, of full age, hereby certifies as follows:

1. I am the Co-Managing Member of Cherokee Equities, LLC (the "Lender"). I am fully familiar with the facts and circumstances set forth herein and make this certification in support of the Lender's motion for an order modifying the automatic stay (the "Motion"), so that the Lender may obtain a judgment of foreclosure for the Property (defined below) consistent with the stay relief order obtained in the case of the Walshes (described below)..

2. In July 2007, Robert and Lorraine Walsh (the "Walshes") and Walsh Securities (the "Borrower") agreed to pay Lender $1.125 million as part of a resolution of certain litigation and threatened litigation (the "Settlement").[1]

---

[1] The Settlement's terms are contained in a settlement agreement (the "Settlement Agreement") among the Lender, Walsh Securities, the Debtors and others. By its terms, the Settlement Agreement is confidential, but the Note and Mortgage evidence the Lender's secured claim without the need for submission of the Settlement Agreement. If the Court requires, the Lender will submit a copy of the Settlement Agreement *in camera* under seal.

3.  In connection with the Settlement, Walsh Securities, as borrower, executed a note in favor of the Lender for $900,000 (the "Note"). The Walshes were both guarantors of the Note as described below. A true and correct copy of the Note is annexed hereto as Exhibit "A."

4.  Under the terms of the Note, the Walshes were to make quarterly payments and repay the Note within two years. If the Lender did not receive full payment of any amount within five days of it being due, a late charge of 5% of the overdue principle and interest would be charged. See Note (Ex. A hereto), at §6(A). The Note also provides that the Lender has a right to recoup all of its costs and expenses in enforcing the Note, including reasonable attorneys fees. See Note (Ex. A hereto), at §6(E).

5.  To secure and guarantee the Note, the Walshes executed a third mortgage on their home located at 46 Laura Lane, Morristown, New Jersey (as more particularly described in the Mortgage, the "Property"), in favor of the Lender (the "Mortgage"). A true and correct copy of the Mortgage is annexed hereto as Exhibit "B."

6.  The Note, the Mortgage and all other related loan documents shall be referred to collectively herein as the "Loan Documents."

## DEFAULT UNDER THE LOAN DOCUMENTS

A.  **Failure to Pay Principal and Interest Due**

7.  The Debtor and the Walshes have failed to make the monthly payments of principal and interest due under the Loan Documents on October 7, 2008 and thereafter.

8.  The failure to pay the principal and interest due under the Loan Documents constitutes a Default. See Mortgage (Ex. B hereto), at § 18; Note (Ex. A hereto), at § 6(B).

2

9. By reason of the failure to pay the amounts due under the Loan Documents, the Lender accelerated and demanded payment of all sums due under the Note and Mortgage. Notwithstanding this default, the Note otherwise matured on July 6, 2009, almost 18 months ago.

**B.   The Walshes' Default on the Senior Mortgages**

10. Upon information and belief, the Walshes currently owe over $1.2 million on their first and second mortgages (the "Senior Mortgages").

11. Upon information and belief, the Walshes are in default on the Senior Mortgages.

**BANKRUPTCY CASE; STAY RELIEF ORDER IN WALSHES' CASE**

12. On November 9, 2010 (the "Petition Date"), the Debtor filed a petition under Chapter 11 of the Bankruptcy Code, staying the Lender's actions to foreclose on the Property.

13. Cherokee has filed a proof of claim against the Debtor in the amount of $1,133,939.96 (claim no. 2 on the claims registry, filed January 4, 2011).

14. In the Walshes' bankruptcy case, the Court has entered an order granting relief from the automatic stay to permit Cherokee to continue the foreclosure action through foreclosure judgment. A true copy of that order is attached hereto as Exhibit C. Cherokee filed a local rule statement of amount due in the Walshes' case, no. 10-45765 NLW, at docket entry 11. Because the debt amounts are slightly different for the Debtor since it is not a mortgagor, I have not submitted a local rule certification in this case.

15. The action needs to proceed against the Debtor as well, since the Debtor is an obligor on the same indebtedness that is secured by the Mortgage. Otherwise, Cherokee is unfairly exposed to the risk that it may not obtain good title to the Property should the Court ultimately grant further relief from the automatic stay and a sale occur.

16. The Debtor has already defaulted in the foreclosure action. A true copy of the pre-petition request to enter default is attached hereto as Exhibit D.

3

17. Cherokee requested that the Debtor consent to this stay relief, but I am advised that the Debtor will not grant such consent. Hence, Cherokee has filed this motion.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: March 13, 2011

_____
JAY WOLFKIND

4