Gary F. Eisenberg, Esq.
HERRICK, FEINSTEIN LLP
One Gateway Center
Newark, New Jersey 07102
(973) 274-2000
Co-Counsel for Cherokee Equities, LLC

| | |
|---|---|
| In Re:<br><br>WALSH SECURITIES, INC.,<br><br>            Debtor. | Case No.: 10-44845<br><br>Hon. Novalyn L. Winfield |

## DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY CHEROKEE EQUITIES, LLC

PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY. THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THIS PLAN OF REORGANIZATION. THE PLAN PROPONENT BELIEVES THAT THIS PLAN OF REORGANIZATION IS IN THE BEST INTEREST OF THE CREDITORS AND THAT THE PLAN IS FAIR AND EQUITABLE. THE PROPONENT URGES THAT THE VOTER ACCEPT THE PLAN.

Dated: April 8, 2011

Proponent    Cherokee Equities, LLC

By:          _Jay Wolfkind_

Title:       Authorized Signatory

THIS DISCLOSURE STATEMENT AND ITS RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN (AS SUCH TERM IS DEFINED BELOW).

THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN AND IS **NOT** INTENDED TO REPLACE A CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN, BUT RATHER TO AID AND SUPPLEMENT SUCH REVIEW. THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED PROVISIONS SET FORTH IN THE PLAN (WHICH IS INCLUDED AS <u>EXHIBIT "A"</u> TO THIS DISCLOSURE STATEMENT). IN THE EVENT OF A CONFLICT BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT, THE PROVISIONS OF THE PLAN WILL GOVERN. ALL HOLDERS OF CLAIMS ARE ENCOURAGED TO REVIEW THE FULL TEXT OF THE PLAN AND TO READ CAREFULLY THIS ENTIRE DISCLOSURE STATEMENT, INCLUDING ALL EXHIBITS HERETO, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT THE PLAN.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF, AND THE DELIVERY OF THIS DISCLOSURE STATEMENT DOES NOT IMPLY THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME SUBSEQUENT TO THE DATE HEREOF.

HOLDERS OF CLAIMS AND INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS

PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. EACH SUCH HOLDER SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

## TABLE OF CONTENTS

I. INTRODUCTION...........................................................................................2
    **A.**    Purpose of This Document........................................................2
    **B.**    Confirmation Procedures .........................................................4
    **C.**    Disclaimer ................................................................................7

II. BACKGROUND ...........................................................................................7
    **A.**    Description and History of the Debtor's Business....................7
    **B.**    Significant Events During the Bankruptcy ..............................9

III. SUMMARY OF THE PLAN OF REORGANIZATION .........................10
    **A.**    General....................................................................................10
    **B.**    Plan Overview........................................................................11
    **C.**    What Creditors and Interest Holders Will Receive Under the
          Proposed Plan........................................................................11
    **D.**    Unclassified Claims ...............................................................11
    **E.**    Classified Claims and Interests..............................................14
    **F.**    Means of Effectuating the Plan..............................................15
    **G.**    Other Provisions of the Plan ..................................................16
    **H.**    Conditions Precedent to Effective Date .................................18

IV. CONFIRMATION REQUIREMENTS AND PROCEDURES...................18
    **A.**    Who May Vote or Object........................................................18
    **B.**    Best Interests of Holders of Claims and Interests/Liquidation
          Analysis..................................................................................21
    **C.**    Financial Feasibility...............................................................23

V. CERTAIN RISK FACTORS TO BE CONSIDERED .............................24
    **A.**    Certain Bankruptcy Law Considerations................................25
    **B.**    Additional Factors to be Considered.......................................25

VI. CERTAIN FEDERAL INCOME TAX CONSEQUENCES ....................27
    **A.**    Taxes......................................................................................27
    **B.**    New Common Stock ...............................................................30

VII. EFFECT OF CONFIRMATION OF PLAN...........................................30
    **A.**    Discharge ...............................................................................30
    **B.**    Exculpation ............................................................................31
    **C.**    Non-Vesting of Property in the Debtor...................................31
    **D.**    Modification of Plan ..............................................................31
    **E.**    Post-Confirmation Conversion/Dismissal .............................31
    **F.**    Post Confirmation Fees..........................................................32

VIII. ALTERNATIVES TO REORGANIZATION PLAN.............................32

IX. CONCLUSION ..........................................................................................33

**I.**

**INTRODUCTION**

Walsh Securities, Inc. ("Walsh Securities", "WSI" or the "Debtor") is the debtor

in this Chapter 11 bankruptcy case (the "Chapter 11 Case"). On November 9, 2010, WSI

commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the United

States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. §101, et seq. Chapter 11 of the

Code allows the Debtor, and under some circumstances, creditors and other parties in

interest, to propose a plan of reorganization ("Plan"). The Plan provides for the

liquidation of the Debtor's assets and a restructuring of certain liens and covenants

pertaining to the Debtor's property. Cherokee Equities, LLC ("Creditor" or "Proponent")

is the party proposing the Plan which is sent to you in the same envelope as this

document.   THE DOCUMENT YOU ARE READING IS THE DISCLOSURE

STATEMENT FOR THE PLAN WHICH IS ANNEXED HERETO AS EXHIBIT "A".

This is a liquidating plan. In other words, the Proponent seeks to liquidate the

Debtor's assets and distribute the proceeds relating to the Debtor's property.

**A.     Purpose of This Document**

This Disclosure Statement summarizes what is in the Plan, and provides you with

certain information relating to the Plan and the process the Court follows in determining

whether or not to confirm the Plan.

This Disclosure Statement is provided pursuant to section 1125 of the Bankruptcy

Code to all the known creditors of the Debtor. The purposes of this Disclosure Statement

is to provide sufficient information to enable creditors who are entitled to vote to make an

1

informed decision on whether to accept or reject the Plan. This Disclosure Statement describes, among other things:

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

(1) **WHO CAN VOTE OR OBJECT,**

(2) **THE PROPOSED TREATMENT OF YOUR CLAIM (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOU WOULD RECEIVE IN LIQUIDATION,**

(3) **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

(4) **WHAT THE COURT WILL CONSIDER WHEN DECIDING WHETHER TO CONFIRM THE PLAN,**

(5) **THE EFFECT OF CONFIRMATION, AND**

(6) **THE FEASIBILITY OF THE PLAN.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

Bankruptcy Code section 1125 requires a Disclosure Statement to contain "adequate information" concerning the Plan. The term "adequate information" is defined in Bankruptcy Code section 1125(a) as "information of a kind, and in sufficient detail," about a debtor and its operations "that would enable a hypothetical reasonable investor typical of holders of claims or interests" of the debtor to make an informed judgment about accepting or rejecting the Plan. The Bankruptcy Court ("Court") has determined

2

that the information contained in this Disclosure Statement is adequate, and it has approved this document in accordance with Bankruptcy Code section 1124.

This Disclosure Statement is provided to each creditor whose claim has been scheduled by the Debtor or who has filed a proof of claim against the Debtor and to each interest holder of record as of the date of approval of this Disclosure Statement. Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to or concurrently with such solicitation.

**B.     Confirmation Procedures**

**Persons Potentially Eligible to Vote on the Plan**

In determining acceptance of the Plan, votes will only be counted if submitted by a creditor whose claim is duly scheduled by the Debtor as undisputed, non-contingent and unliquidated, or who, prior to the hearing on confirmation of the Plan, has filed with the Court a proof of claim which has not been disallowed or suspended prior to computation of the votes on the Plan. All holders of equity interests in the Debtor of record as of the date of approval of this Disclosure Statement may vote on the Plan. The Ballot Form that you received does not constitute a proof of claim, and receipt of a ballot from you is not a waiver of any objection that the Proponent may have to your ballot. If you are uncertain whether your claim has been correctly scheduled, you should check the Debtor's Schedules, which are on file at the office of the Clerk of the Bankruptcy Court located at: United States Bankruptcy Court, District of New Jersey, U.S. Court House, King Federal Building, 50 Walnut Street, Newark, NJ 07102. The Clerk of the Bankruptcy Court will not provide this information by telephone.

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE

PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT
LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE
DEBTOR AND ON ALL CREDITORS AND EQUITY INTEREST HOLDERS IN
THIS CHAPTER 11 CASE.

The date of entry of an order approving this Disclosure Statement is fixed
as the "Voting Record Date". Only Persons who hold Claims, other than any other parties
specified by the Court, are entitled to receive a copy of this Disclosure Statement and all
of the related materials.

In order to conserve cost and expenses, the Debtor's bankruptcy counsel
has agreed to serve as the balloting agent (the "Balloting Agent") for the purpose of
receiving ballots to accept or reject the Plan and to calculate and report on voting results.
Please complete and sign your ballot and return it in the enclosed pre-addressed envelope
to (the "Balloting Agent"):

> HERRICK, FEINSTEIN LLP
> Attn: Gary F. Eisenberg, Esq.
> 1 Gateway Center
> Newark, NJ 07102
> Telephone: (973) 274-2000

ALL   PROPERLY   COMPLETED   BALLOTS   RECEIVED   BY   THE
BALLOTING AGENT PRIOR **TO** _____, **2011 AT 5:00 p.m. (EDT)** (THE
"VOTING DEADLINE" OR "BALLOTING DEADLINE") WILL BE COUNTED FOR
PURPOSES OF DETERMINING WHETHER THE VOTING CLASS OF IMPAIRED
CLAIMS ENTITLED TO VOTE ON THE PLAN HAS ACCEPTED THE PLAN. ANY
BALLOTS RECEIVED AFTER THE VOTING DEADLINE WILL NOT BE
COUNTED UNLESS OTHERWISE ORDERED BY THE BANKRUPTCY COURT.

4

<u>SEE ARTICLE IV OF THIS DISCLOSURE STATEMENT FOR FURTHER INFORMATION REGARDING CONFIRMATION AND VOTING ISSUES</u>.

**Your vote on the Plan is important. The Bankruptcy Code requires as a condition to confirmation of a plan of reorganization that each class that is impaired under such plan vote to accept such plan, unless the "cram down" provisions of the Bankruptcy Code are employed.**

**1.     Time and Place of the Confirmation Hearing**

The hearing at which the Court will determine whether to confirm the Plan will take place on _____, **2011, at 2:00 p.m.**, United States Bankruptcy Court, District of New Jersey, King Federal Building, 50 Walnut Street, Newark, NJ 07102.

**2.     Deadline For Voting For or Against the Plan**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to Herrick Feinstein LLP, One Gateway Center, Newark, NJ 07102, Attn:  Gary F. Eisenberg, Esq.

Your ballot must be received by _____, **2011, at 5:00 p.m.** or it will not be counted.

**3.     Deadline For Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon (1) Herrick, Feinstein, LLP, Counsel for the Debtor, One Gateway Center, Newark, NJ 07102, (Attn:  Gary F. Eisenberg, Esq.) and (2) the Office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102 (Attn: _____, Esq.) by _____ ___, 2011 at 5:00 p.m.

5

4.    **Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact Counsel to the Debtor, (Attn: Gary F. Eisenberg, Esq., Herrick, Feinstein LLP, One Gateway Center, Newark, NJ 07102, telephone: (973) 274-2000, email: geisenberg@herrick.com.

## C.    Disclaimer

The financial data relied upon in formulating the Plan is based on the Debtor's statements of record regarding its only scheduled asset, a litigation entitled *Walsh Securities, Inc. v. Cristo Property Management et al.* (Civil Action No. CV-97-34961) (the "RICO Action"). The Proponent represents that everything stated in the Disclosure Statement is true to the Proponent's best knowledge.

PLEASE NOTE THAT THE APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A RULING ON THE MERITS, FEASIBILITY OR DESIRABILITY OF THE PLAN.

## II.

## BACKGROUND

## A.    Description and History of the Debtor's Business

The following is based on pleadings filed by the Debtor in this case.

Walsh Securities, Inc. was formerly a large mortgage business, with fourteen (14) offices in twelve (12) states, approximately 175 employees and over 1,600 independent brokers. Walsh Securities at one time produced over $660 million of mortgages a year.

Robert Walsh is the President, sole officer, director and majority owner of WSI.

Prior to joining WSI, Mr. Walsh was President of Carteret Savings Bank, which was New

Jersey's largest savings and loan.

In 1997, WSI commenced the RICO Action in the United States District Court for

the District of New Jersey, against a multitude of defendants.  In its Complaint, WSI

alleges that it was the victim of a fraudulent scheme perpetrated by a large number of

mortgage companies, real estate appraisers and title companies, which ultimately induced

WSI to purchase a large number of loans on real properties where the prices had been

inflated.  This fraud scheme ultimately led to the demise of WSI.

WSI has been represented in the aforementioned litigation by Stone & Magnanini,

LLP, whose retention the Court has approved subsequent to the Petition Date, pursuant to

the order dated January 26, 2011.

Stone & Magnanini is handling the RICO Action which Robert A. Magnanini

Esq., has handled since its inception in 1997.  This action seeks to recover direct,

consequential and punitive damages arising from a residential real estate flipping scheme

that defrauded the Debtor out of approximately 230 loans, over the course of at least

sixteen (16) months, with a total amount of approximately $24 million dollars in

principal, and as of 2007, over $45 million dollars in accrued interest, over $5.5 million

in attorney's fees and costs, the loss of a sale of the company for over $420 million and

finally, the destruction of the Debtor, with the loss of over 250 jobs in fourteen (14)

offices in twelve (12) states.

The action was first stayed, then administratively dismissed from June 9, 1998

until September 30, 2004, pending completion of numerous criminal prosecutions of

many of the Defendants. A Third Amended Complaint was filed on January 31, 2005 and a present Fourth Amended Complaint was filed on July 10, 2009.

Discovery is proceeding in the litigation and the case is being actively defended on behalf of a number of defendants. The District Court has yet to assign a trial date to the litigation.

**Retention of Special Litigation Counsel**

Robert A. Magnanini, Esq., has been the attorney primarily responsible for the Litigation, since its inception in 1997. At the inception of the litigation, Mr. Magnanini was associated with the firm of Latham & Watkins, LLP.

In 2004, Mr. Magnanini joined the form of Bois, Schiller & Flexner, LLP and in 2005 an agreement was executed between the firm and WSI, pursuant to which Boies, Schiller & Flexner, LLP was retained as counsel to pursue the Litigation.

In 2009, Mr. Magnanini and Mr. Stone formed Stone, Magnanini, LLP from Boies, Schiller & Flexner LLP, and an agreement was executed between Stone & Magnanini, LLP and WSI, pursuant to which Stone & Magnanini LLP was retained to continue prosecution of the Litigation.

**B.      Significant Events During the Bankruptcy**

The Debtor was authorized to retain Stone & Magnanini LLP as special litigation counsel in the RICO Action by order of the Bankruptcy Court dated December ___, 2010. The fees of Stone & Magnanini LLP are subject to the approval of the Bankruptcy Court.

**1.      Other Legal Proceedings**

To the Proponent's knowledge, the Debtor is not currently involved in any non-bankruptcy legal proceedings other than the RICO Action described above.

8

2.      **Actual and Projected Recovery of Preferential or Fraudulent Transfers**

The Proponent has obtained documents from the Debtor's principals but those documents are too sparse to permit comprehensive evaluation of the Debtor's pre-Petition Date transfers pursuant to Sections 544, 547, 548 and 550 of the Bankruptcy Code ("Avoidance Actions").

3.      **Current and Historical Financial Conditions**

The Debtor has incurred (or should have incurred) minimal post-petition obligations. The last monthly operating report is annexed hereto as Exhibit "B".

## III.

## SUMMARY OF THE PLAN OF REORGANIZATION

A.      **General**

**SET FORTH IN THIS SECTION IS A SUMMARY OF CERTAIN OF THE MATTERS CONTEMPLATED TO OCCUR EITHER PURSUANT TO OR IN CONNECTION WITH CONFIRMATION OF THE PLAN. THIS SUMMARY HIGHLIGHTS THE SUBSTANTIVE PROVISIONS OF THE PLAN AND IS NOT, NOR IS IT INTENDED TO BE, A COMPLETE DESCRIPTION OR A SUBSTITUTE FOR A FULL AND CAREFUL READING OF THE PLAN, A COPY OF WHICH IS ANNEXED HERETO AS EXHIBIT "A". STATEMENTS REGARDING PROJECTED AMOUNTS OF CLAIMS OR DISTRIBUTIONS (OR THE VALUE OF SUCH DISTRIBUTIONS) ARE ESTIMATES BY THE PROPONENT BASED ON AVAILABLE INFORMATION AND ARE NOT A REPRESENTATION AS TO THE ACCURACY OF THESE AMOUNTS. FOR AN EXPLANATION OF THE BASIS FOR, LIMITATIONS OF AND**

9

**UNCERTAINTIES RELATING TO THESE CALCULATIONS, SEE SECTION
VII ("CERTAIN RISK FACTORS TO BE CONSIDERED"), BELOW.**

**B.      Plan Overview**

A principal goal of a chapter 11 bankruptcy case is to reorganize or liquidate a
debtor's business for the benefit of itself and its creditors and interest holders. The plan of
reorganization or liquidation is the blueprint by which these goals are accomplished. It
provides the rules and procedures pursuant to which a debtor's creditors (and interest
holders, when possible), will be paid and lists the steps a debtor or its successors will take
to either reorganize or wind up its business. The Plan describes the treatment afforded to
Unclassified Claims, Unimpaired Claims and the agreements achieved with each of the
creditors in the Impaired Classes.

**C.      What Creditors and Interest Holders Will Receive Under the Proposed Plan**

The Plan classifies claims and interests in various classes.   The Plan states
whether each class of claims or interests is impaired or unimpaired. The Plan provides
the treatment each Creditor in each class will receive.

**D.      Unclassified Claims**

Certain types of claims are not placed into voting classes.    They are not
considered impaired and they do not vote on the Plan because they are automatically
entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the
Proponent has not placed the following claims in a class:

**1.      Administrative Expenses and Fees**

Administrative expenses are claims for fees, costs or expenses of administering
the Debtor's Chapter 11 Case which are allowed under Bankruptcy Code section
507(a)(1), including all professional compensation requests pursuant to sections 330 and

10

331 of the Bankruptcy Code.  The Bankruptcy Code requires that all administrative expenses including fees payable to the Bankruptcy Court and the U.S. Trustee which were incurred during the pendency of the Chapter 11 Case must be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.  Proponent reserves the right to object to any Administrative Claim on any legal basis available to it and to withdraw the Plan if Administrative Claims in total exceed $10,000.00 (other than those of Stone & Magnanini exclusive of that firm's expenses).

The following chart lists all of the Debtor's unpaid administrative fees and expenses ("Compensation"), an estimate of future professional fees and other administrative claims and fees and their treatment under the Plan.

| NAME | AMOUNT ESTIMATED | TREATMENT | TYPE OF CLAIM |
|------|------------------|-----------|---------------|
| Wasserman Jurista & Stoltz | To be provided by firm | Paid in full upon approval by the Court | Professional fees |
| Stone & Magnanani | Subject to retention agreement filed under seal | Paid in full upon approval by the Court | Professional fees |

### Court Approval of Professional Compensation Required

Pursuant to the Bankruptcy Code, the Court must rule on all professional compensation and expenses listed in this chart before the compensation and expenses will be owed.  The professional in question must file and serve a properly noticed fee application for compensation and reimbursement of expenses and the Bankruptcy Court must rule on the application.  Only the amount of compensation and reimbursement of expenses allowed by the Bankruptcy Court will be owed and required to be paid under this Plan as an administrative claim.

Each professional person who asserts a further administrative claim that accrues before the confirmation date shall file with the Bankruptcy Court, and serve on all parties

11

required to receive notice, an application for compensation and reimbursement of expenses no later than sixty (60) days after the Effective Date of the Plan (other than counsel in the RICO Action). Failure to file such an application timely shall result in the professional person's claim being forever barred and discharged. Each and every other person asserting an administrative claim shall be entitled to file a motion for allowance of the asserted administrative claim within sixty (60) days of the Effective Date of the Plan, or such administrative claim shall be deemed forever barred and discharged. No motion or application is required to fix the fees payable to the Clerk's Office or Office of the United States Trustee. Such fees are determined by statute.

### 2.     Priority Tax Claims

Priority tax claims ("Property Tax Claims") are certain unsecured income, employment and other taxes described by Bankruptcy Code section 507(a)(8). The Bankruptcy Code requires that each holder of such a section 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding six years from the date of the assessment of such tax. On, or as soon as practicable after the Effective Date, except to the extent that a holder of an Allowed Priority Tax Claim has been paid prior to the Effective Date, each holder of an Allowed Priority Tax Claim shall be entitled to receive, in full settlement, satisfaction, release and discharge of and in exchange of such Allowed Priority Tax Claim, cash in an amount equal to the Allowed but unpaid portion of such Allowed Priority Tax Claim, as shall have been determined by the Debtor or such other less favorable treatment as to which the Debtor or Reorganized Parallel and such holder shall have agreed upon in writing. Pursuant to Bankruptcy Rule 3002(c)(1), all Priority Tax Claims must have been filed

12

with the Bankruptcy Court no later than one-hundred and eighty (180) days after the

Petition Date (*i.e.* May 10, 2011).

The following chart lists all of the Debtor's known section 507(a)(8) priority tax

claims and their treatment under the Plan:

| Description | Amount Owed | Treatment |
|---|---|---|
| None | None | None |
| | | |

**E.    Classified Claims and Interests**

**1.    Classification of Claims and Interests**

The Debtor believes that the Plan meets the classification requirements of the

Bankruptcy Code which require that a plan of reorganization place each claim or interest

into a class with other claims or interests which are "substantially similar."

**a.    Class Categories**

The following classes of Claims and Interests are designated pursuant to

and in accordance with section 1123(a)(1) of the Bankruptcy Code, which classes shall be

mutually exclusive:

| CLASS | CLASS NAME | STATUS |
|---|---|---|
| Class 1 | General Unsecured Claims | Impaired/Entitled to Vote |
| Class 2 | Insider Claims | Impaired/Entitled to Vote |
| Class 3 | Allowed Interests | Impaired/Entitled to Vote |

**b.    Classes of Secured Claims**

The following narrative lists all classes of creditors containing the holders of the

Debtor's secured pre-petition claims and their treatment under this Plan:

**Class 1.**    Class 1 consists of the holders of Secured Claims against the Debtor, other than
Insider Claims.  Three Unsecured Claims are listed:  the Proponent, $1,077,000.00;

LeClair Ryan, $200,000.00; Mark Friedman, Esq., $15,000.00. Proponent has filed a proof of claim in the amount of $1,133,939.96. The Claims in the class will receive the following treatment: each holder of the Allowed Claim in this class shall receive Cash equal to its pro rata share of the proceeds of such assets, based on the ratio of the amount of such Allowed Claims to All Allowed Claims in this class, on the latter of (a) the Effective Date; or (b) the date that is less than five (5) days after the date of receipt of funds to be distributed, the Debtor's Assets; or (c) the date on which such Claim becomes an Allowed Claim.

(1)     The Allowed Class 1 Claims are impaired.

Class 2.   Class 2 shall consist of Allowed Claims of the Insiders. The Claims in this class shall be subordinate to the level of, and receive the same treatment as, the holders of Class 3 Interest.  Notwithstanding the foregoing, if the Bankruptcy Court shall determine that any claim or any holder in this Class shall not be subordinated as provided in the previous sentence (and "Unsubordinated Insider Claim"), the holder of any such Allowed Unsubordinated Insider Claim shall receive treatment as if such Allowed Unsubordinated Insider Claim were a Class 1 Claim, but the proceeds of such Claim distribution shall be paid into the Court pending the resolution of the Chapter 11 Cases of Robert and Lorraine Walsh.

(1)     The Class 2 Claims are Impaired.

Class 3.   Class 3 shall consistent of the Allowed Interest of the equity holders of the Debtor. The equity holders will not receive any distribution on account of such equity position.

(1)     The Class 3 Interests are impaired.

## F.     Means of Effectuating the Plan

### 1.     Funding for the Plan

The Plan will be funded by the estate's cash on hand and, to the extent such cash is insufficient to make the payments required under the Plan, upon receipt of proceeds from the RICO Action.  The Plan is a liquidating plan and thus does not contemplate the Debtor's post-petition management.

### 2.     Disbursing Agent

Proponent shall appoint a neutral third party to act as Disbursing Agent for the purpose of making all distributions provided for under the Plan.

14

### a.    Powers of the Distribution Agent

The Disbursing Agent shall be empowered to (i) take all steps and execute all instruments and documents necessary to effectuate the disbursements to be made under this Plan; (ii) make Distributions contemplated by this Plan; (iii) comply with this Plan and the obligations thereunder; (iv) employ, retain, or replace professionals to represent it with respect to its responsibilities (including control of the RICO Action as the Debtor's authorized representative); and (v) exercise such other powers as may be vested in it pursuant to order of the Court or pursuant to this Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of this Plan.

### b.    Duties of the Disbursing Agent

The Disbursing Agent shall have the duties of carrying out the disbursement under this Plan, which shall include taking or not taking any action which the Disbursing Agent deems to be in furtherance thereof, including, from the date of its appointment, making payments and conveyances and effecting other transfers necessary in furtherance of this Plan.

## G.    Other Provisions of the Plan

### 1.    Executory Contracts and Unexpired Leases

### a.    Rejected if not assumed

The confirmation of this Plan shall constitute a rejection of all leases and executory contracts to which the Debtor is a party.  Any proof of Claim for damages arising out of any assumption or rejection must be filed with the Bankruptcy Court within thirty (30) days of the order granting the rejection. Failure to file such a proof of Claim in a timely fashion shall result in its disallowance unless the Bankruptcy Court orders otherwise.  If you are a party to an unexpired lease or an executory contract and you

15

object to the above treatment of your unexpired lease or executory contract, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

### b.      Objection to Assumption

Any entity which is a party to an executory contract or unexpired lease to be assumed hereunder may, at least three (3) days prior to the first scheduled date of the Plan Confirmation hearing file with the Bankruptcy Court and serve upon Debtor's and Proponent's counsel any objection to assumption setting forth the basis for the objection, the nature of any alleged defaults thereunder and all monetary and non-monetary cures allegedly due.  Failure to file an objection shall be deemed a consent to the proposed assumption.

### 2.      Changes in Rates Subject to Regulatory Commission Approval

This Debtor is not subject to governmental regulatory commission approval of its rates.

### 3.      Retention of Jurisdiction

The Court will retain jurisdiction as provided in the Plan.

### 4.      Procedures for Resolving Contested Claims.

The Proponent shall have the exclusive right subsequent to confirmation of the Plan to object to the allowance of claims. The Proponent has not reviewed most of the proofs of claim that have been filed or claims that have been scheduled in the Chapter 11 Case.   If the non-Insider creditors accept the Plan, the Proponent does not intend to object to their claims. If the Plan is Confirmed, Proponent reserves the right to object to any of the other filed proofs of claim or scheduled claims.  Nothing in this Plan will affect or extend the Bar Date.

16

**H.     Conditions Precedent to Effective Date**

Subject to waiver by the Proponent, the occurrence of the Effective Date

of this Plan is subject to the following conditions precedent:

**a.**     The Confirmation Order shall have become a Final Order;

**b.**     Any and all other actions and all agreements, instruments or other documents necessary to implement the terms and provisions of this Plan shall have been executed, and approved by the Court, if necessary, prior to the Effective Date; and

**c.**     The Administrative Claims (other than those of Stone & Magnanini exclusive of that firm's expenses) do not exceed $10,000.

If the above conditions of the Plan are not met, the Proponent may (i)

withdraw the Plan, or (ii) waive, in whole or in part, any such conditions.

**2.     Modification**

The Plan Proponent may alter, amend or modify the Plan at any time prior to the

Confirmation Date and thereafter as provided in section 1127(b) of the Bankruptcy Code.

**IV.**

**CONFIRMATION REQUIREMENTS AND PROCEDURES**

**A.     Who May Vote or Object**

**1.     Who May Object to Confirmation of the Plan**

Any party in interest may object to the confirmation of the Plan, but as explained

below not everyone is entitled to vote to accept or reject the Plan.

**2.     Who May Vote to Accept/Reject the Plan**

A creditor or interest holder has a right to vote for or against the Plan if that

creditor or interest holder has a claim that is both (1) allowed or allowed for voting

purposes and (2) classified in an Impaired Class.

17

### a.    What Is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim.  When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtor's Schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim.  An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

In addition to objections with respect to late filed Claims, any Claim filed after any applicable Bar Date shall, unless the Court otherwise directs, be deemed disallowed in full and expunged without further order of the Court.  Filed or claims appearing on the Debtor's Schedules may be amended or reconsidered only as provided in the Bankruptcy Code and Bankruptcy Rules.

### b.    What Is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is <u>impaired</u> under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.  For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of their claim plus interest.

18

In this case, the Proponent believes that Classes 1 through 9 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

### 3. Who Is <u>Not</u> Entitled to Vote

The following four types of claims are <u>not</u> entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code section 507(a)(1), (a)(2), and (a)(7); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code Section 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4. Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within

19

that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in this Disclosure Statement.

### 6.     Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when (a) more than one-half (½) in number and (2) at least two-thirds in dollar amount of the allowed claims that actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds (b) in amount of the allowed interest-holders of such class which actually voted, voted to accept the Plan.

### 7.     Treatment of Non-accepting Classes

As noted above, even if _all_ impaired classes do not accept the proposed Plan, the Bankruptcy Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner required by the Bankruptcy Code. The process by which non-accepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown".  The Bankruptcy Code allows the Plan to be "crammed down" on non-accepting classes of claims or interests if it meets all consensual requirements except the voting requirements of section 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. §1129(b) and applicable case law.

### 8.     Request for Confirmation Despite Non-acceptance by Impaired Classes

The Proponent asks the Bankruptcy Court to confirm this Plan by cramdown on impaired classes if any of these classes do not vote to accept the Plan.

### B.     Best Interests of Holders of Claims and Interests/Liquidation Analysis

20

The "best interests of creditors" test requires that the Bankruptcy Court find either that all members of each impaired class have accepted the plan or that each holder of an allowed claim or interest of each impaired class of claims or interests will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date. Proponent makes no statement about whether it expects any holder of an Allowed Claim to reject the Plan.

To calculate what holders of Allowed Claims would receive if the Debtor were hypothetically liquidated under chapter 7 of the Bankruptcy Code, the Court must first determine the dollar amount that would be realized from the liquidation of the Debtor. The funds obtained from liquidation would consist of the net proceeds from the disposition of the Debtor's assets (after satisfaction of all valid liens) augmented by the cash held by the Debtor and recoveries on actions against third parties, if any.  The fund would then be reduced by the costs of the liquidation.  The costs of liquidation under chapter 7 would include the fees and expenses of a trustee, as well as those of counsel and other professionals that might be retained by the trustee, selling expenses, any unpaid expenses incurred by the Debtor during the Chapter 11 Case (such as fees for attorneys, financial advisors and accountants) which would be allowed in the chapter 7 proceedings, interest expense on secured debt and claims incurred by the Debtor during the pendency of the case.

The Proponent believes that a chapter 7 liquidation of its assets would result in less value being realized under the Plan by holders of Allowed Claims than what is

21

proposed under the Plan. That belief is based upon, among other factors: (a) difficulty for a Chapter 7 trustee to take over and manage the RICO Action given the long history and lack of knowledge regarding same, together with the potential likelihood that a trial date could incur before any substantial preparation is made by the Chapter 7 trustee; (b) the additional administrative expenses involved in the appointment of a trustee, attorneys, accountants, and other chapter 7 professionals; (c) the substantial time which would elapse before creditors would receive any potential distribution in respect of their claims due to the difficulty in recovering assets.

## C.     **Financial Feasibility**

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation should not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor unless such liquidation or reorganization is proposed in the plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on such date. The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

| | |
|---|---|
| Cash estate will have on hand by Effective Date (includes prospective advances from Proponent) | $0 |
| **To Pay:** Administrative claims (including professional fees) | $TBD |
| **To Pay:** Statutory costs & charges | $0 |
| **To Pay:** Other Plan Payments due on Effective Date | $0 |
| Balance after paying these amounts ................................................... | $ TBD |

The sources of the cash Debtor will have on hand by the Effective Date, as shown above are:

22

| | |
|---|---|
| $0 | $ Cash in DIP Account now |
| +$0 | Additional cash DIP will accumulate from net earnings between now and Effective Date |
| +$TBD | Cash to be recovered from RICO Action |
| +0 | Other |
| $TBD | Total |

The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments. Since all payment are due on the Effective Date, the cash shown above suffices to show that all Plan payments can be made.

Taking into consideration that only one asset is to be administered and liquidated, there should be sufficient cash to implement the Plan.

Accordingly, the Plan Proponent believes, on the basis of the foregoing, that the Plan is feasible.

## V.

### CERTAIN RISK FACTORS TO BE CONSIDERED

HOLDERS OF CLAIMS AGAINST THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED HEREIN BY REFERENCE), PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN. THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY

# RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

**A.     Certain Bankruptcy Law Considerations**

### 1.     Risk of Non-Confirmation of the Plan

Although the Proponent believes that the Plan will satisfy all requirements necessary for confirmation by the Court, there can be no assurance that the Court will reach the same conclusion. Moreover, there can be no assurance that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate the re-solicitation of votes.

### 2.     Risk of Non-Occurrence of the Effective Date

Although the Proponent believes that all of the conditions to the Effective Date will occur after the entry of the Confirmation Order, there can be no assurance as to the timing of the Effective Date or that such conditions will ever occur.

**B.     Additional Factors to be Considered**

### 1.     The Proponent Has No Duty to Update

The statements contained in this Disclosure Statement are made by the Proponent as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date. The Proponent has no duty to update this Disclosure Statement unless otherwise ordered to do so by the Bankruptcy Court.

### 2.     No Representations Outside This Disclosure Settlement Are Authorized

No representations concerning or related to the Debtor, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other

than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan other than as contained in, or included with, this Disclosure Statement should not be relied upon by you in arriving at your decision.

### 3.    Projections and Other Forward-Looking Statements Are Not Assured, and Actual Results May Vary

Certain of the information contained in this Disclosure Statement is, by nature, forward looking, and contains estimates and assumptions which might ultimately prove to be incorrect, and contains projections which may be materially different from actual future experiences. There are uncertainties associated with any projections and estimates, and they should not be considered assurance or guarantees of the amount of funds or the amount of Claims in the various Classes that might be allowed.

### 4.    No Legal or Tax Advice is Provided to You By This Disclosure Statement

The contents of this Disclosure Statement should not be construed as legal, business or tax advice. Each creditor or Equity Interest holder should consult his, her, or its own legal counsel and accountant as to legal, tax and other matters concerning his, her, or its Claim or Equity Interest.

This Disclosure Statement is not legal advice to you. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

### 5.    No Admission Made

Nothing contained herein shall constitute an admission of, or be deemed evidence of, the tax or other legal effects of the Plan on the Debtor or on holders of Claims or Equity Interests.

25

6.      **Objection to Classifications**

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class. The Debtor believes that the classification of Claims and Interests under the consensual Plan complies with the requirements set forth in the Bankruptcy Code. However, there can be no guaranty that the Court would reach the same conclusion.

## VI.

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES

A.      **Taxes**

The following discussion summarizes some of the more significant United States federal income tax consequences of the Plan to certain holders of Claims or Equity Interests. The analysis contained herein is based upon the Internal Revenue Code of 1986, as amended (the "IRC" or "Tax Code"), the Treasury Regulations promulgated and proposed thereunder (the "Regulations"), judicial decisions and published administrative rulings and pronouncements of the Internal Revenue Service (the "IRS") as in effect on the date hereof. Legislative, judicial or administrative changes or interpretations hereafter enacted or promulgated could alter or modify the analysis and conclusions set forth below. Any such changes or interpretations may be retroactive and could affect significantly the federal income tax consequences discussed below. This summary does not address foreign, state or local income tax, or any estate or gift tax consequences of the Plan, nor does it purport to address the federal income tax consequences of the Plan to special classes of taxpayers (such as foreign companies, nonresident alien individuals, S corporations, banks, mutual funds, insurance companies, financial institutions, small

business investment companies, regulated investment companies, broker-dealers and tax-exempt organizations). Accordingly, it should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to a particular holder of a Claim or Equity Interest.

Due to the complexity of certain aspects of the Plan, some of which are discussed below, the lack of applicable legal precedent and the possibility of changes in law, the differences in the nature of various Claims, the differences in individual Claim or Equity Interest holders' methods of accounting, and the potential for disputes as to legal and factual matters, the federal income tax consequences described herein are subject to significant uncertainties.

THE TAX CONSEQUENCES TO HOLDERS OF CLAIMS OR INTERESTS MAY VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER. MOREOVER, THE TAX CONSEQUENCES OF CERTAIN ASPECTS OF THE PLAN ARE UNCERTAIN DUE TO THE LACK OF APPLICABLE LEGAL PRECEDENT AND THE POSSIBILITY OF CHANGES IN THE LAW. NO RULING HAS BEEN APPLIED FOR OR OBTAINED FROM THE INTERNAL REVENUE SERVICE WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN AND NO OPINION OF COUNSEL HAS BEEN REQUESTED OR OBTAINED BY THE PLAN PROPONENTS WITH RESPECT THERETO.

THIS DISCUSSION DOES NOT CONSTITUTE TAX ADVICE OR A TAX OPINION CONCERNING THE MATTERS DESCRIBED. THERE CAN BE NO ASSURANCE THAT THE INTERNAL REVENUE SERVICE WILL NOT CHALLENGE ANY OR ALL OF THE TAX CONSEQUENCES DESCRIBED

27

HEREIN, OR THAT SUCH A CHALLENGE, IF ASSERTED, WOULD NOT BE
UPHELD. ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST IS
STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING
THE FEDERAL, STATE, LOCAL, FOREIGN OR OTHER TAX CONSEQUENCES
OF THE PLAN.

### 1.    Allocation of Consideration to Interest

A portion of the consideration received by a holder in satisfaction of an Allowed
Claim pursuant to the Plan may be allocated to the portion of such Allowed Claim (if
any) that represents accrued but unpaid interest. Unless otherwise proscribed under
applicable statute or rule, distributions under the Plan are allocated first to the principal of
a Claim, then to any accrued interest. If any portion of the distributions were required to
be allocated to accrued interest, such portion would be taxable to the holder as interest
income, except to the extent the holder has previously reported such interest as income.

In that event, only the balance of the distributions would be considered received
by the holder in respect of the principal amount of the Allowed Claim. Such an allocation
would reduce the amount of the gain, or increase the amount of loss, realized by the
holder with respect to the Allowed Claim. If any such loss were a capital loss, it would
not offset any amount of the distribution that was treated as ordinary interest income
(except, in the case of individuals, to the limited extent that capital losses may be
deducted against ordinary income).

To the extent that any portion of the distributions is treated as interest, holders
may be required to provide certain tax information in order to avoid the withholding of
taxes. HOLDERS   SHOULD   CONSULT   THEIR   OWN   TAX   ADVISORS

CONCERNING THE FEDERAL INCOME TAX TREATMENT OF CONSIDERATION RECEIVED IN SATISFACTION OF THEIR CLAIMS.

TAX CONSEQUENCES MAY VARY BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH HIS, HER OR ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE AND LOCAL INCOME AND OTHER TAX CONSEQUENCES UNDER THE PLAN.

**B.    New Common Stock**

Since no new equity interests are being issued under the Plan, the Plan does not present tax issues relating to conversion of debt to equity.

## VII.

## EFFECT OF CONFIRMATION OF PLAN

**A.    Discharge**

The Plan provides that upon confirmation of the Plan, the Proponent shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. §1141. However, any liability imposed by the Plan will not be discharged. If Confirmation of the Plan does <u>not</u> occur or if, after Confirmation occurs, the Proponent elects to terminate the Plan, the Plan shall be deemed null and void. In such event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any claims against the Proponent or any other persons, or to prejudice in any manner the rights of the Trustee or the Debtor's estate or any person in any further proceeding involving the Debtor or its estate. The provisions of the Plan shall be binding upon the Debtor, the Trustee, all Creditors and all Equity Interest Holders, regardless of

whether such Claims or Equity Interest Holders are impaired or whether such parties accept the Plan, upon Confirmation thereof.

**B.    Exculpation**

Neither the Proponent, nor any of its respective agents, directors, officers, employees, members shareholders, professionals (including counsel), shall have or incur any liability to any creditor of any act, omission, transaction or other activity of any kind or nature in connection with, or arising out of the Chapter 11 Case, the confirmation or consummation of the Plan or the administration of the Plan or property to be distributed under the Plan, except for willful misconduct or gross negligence.

**C.    Non-Vesting of Property in the Debtor**

Since the Plan is a liquidating plan, none of the Assets will be vested in the Debtor once a Property Transfer occurs.

**D.    Modification of Plan**

The Proponent may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or re-voting on the Plan if Proponent modifies the plan before confirmation.

The Proponent may also seek to modify the Plan at any time after confirmation so long as (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modification after notice and a hearing. Proponent further reserves the right to modify the treatment of any Allowed Claims at any time after the Effective Date of the Plan upon the consent of the Creditor whose Allowed Claim treatment is being modified, so long as no other Creditors are materially adversely affected.

**E.    Post-Confirmation Conversion/Dismissal**

30

A creditor or party in interest may bring a motion to convert or dismiss the case under section 1112(b), after the Plan is confirmed, if there is a default in performance of the Plan or if cause exists under section 1112(b). If the Court orders the case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the chapter 11 estate, and that has not been disbursed or transferred pursuant to the Plan, will revest in the chapter 7 estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Court during this case.

**F.       Post Confirmation Fees**

Quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) continue to be payable to the U.S. Trustee post-confirmation until such time as the chapter 11 case is converted, dismissed, or closed pursuant to a final decree.

## VIII.

## ALTERNATIVES TO REORGANIZATION PLAN

If the Plan is not confirmed, then the Chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code. In that event, a trustee would be appointed (which would likely be the Trustee who is currently serving, given his previous service as Chapter 7 trustee in this case) to liquidate and distribute the remaining assets of the estate. The Proponent believes that a liquidation under chapter 7 would likely result in a lower return to holders of claims, due in part to the nature of the RICO Action, its key asset, and the time which would elapse until proceeds (if any) are received.

31

## IX.

### CONCLUSION

The Proponent as the plan proponent urges holders of Claims and Interests entitled to vote on the Plan to accept the Plan and to evidence such acceptance by returning their ballots so they will be received not later than _____ ___, 2011 at 5 :00 p.m.


Date:  April 8, 2011                    CHEROKEE EQUITIES, LLC

                                        BY:_____
                                        Jay Wolfkind, Authorized Signatory


33