| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
|---|---|
| Caption in Compliance with D.N.J. LBR 9004-2(c)<br>WASSERMAN, JURISTA & STOLZ, P.C.<br>225 Millburn Avenue - Suite 207<br>P.O. Box 1029<br>Millburn, New Jersey 07041<br>Phone: (973) 467-2700<br>Fax: (973) 467-8126<br>Counsel to Debtor<br>DANIEL M. STOLZ, ESQ. (DS-1897) | |
| In Re:<br><br>WALSH SECURITIES, INC.,<br><br>                      Debtor. | Case No.: 10-44845<br><br>Hon. Novalyn L. Winfield<br><br>Chapter: 11 |

## APPLICATION FOR APPROVAL OF SETTLEMENT AGREEMENT AND RELEASE WITH COASTAL TITLE AGENCY

The Application of Walsh Securities, Inc. ("WSI" or "Debtor"), hereby requests the entry of an order approving a Settlement Agreement and Release between WSI and Coastal Title Agency ("Coastal") and certain other parties. By way of the within Application, WSI respectfully represents to the Court as follows:

### Background

1. Walsh Securities, Inc. was formerly a large mortgage business, with fourteen (14) offices in twelve (12) states, approximately 175 employees and over 1,600 independent brokers. Walsh Securities at one time produced over $660 million of mortgages a year.

2. Robert Walsh is the President, sole officer, director and majority owner of WSI. Prior to forming WSI, Mr. Walsh was the President of Carteret Savings Bank, which was New Jersey largest savings and loan.

3. In 1997, WSI commenced an action in the United States District Court for the District of New Jersey, against a multitude of defendants. In its Complaint, Walsh alleges that it was the victim of a fraudulent scheme perpetrated by a large number of mortgage companies, real estate appraisers, attorneys and title companies, which ultimately induced WSI to purchase a large number of loans on real properties where the prices had been inflated. This fraud scheme ultimately led to the demise of WSI.

4. Robert Walsh has never been implicated in any of the wrongdoing, and in fact, has spent the last thirteen (13) years of his life pursuing redress against the perpetrators of the fraud through the aforementioned litigation.

5. WSI is represented in the aforementioned litigation by Stone & Magnanini, LLP, a prestigious and capable litigation firm.

6. Stone & Magnanini is handling certain litigation pending in the United States District Court for the District of New Jersey, entitled <u>Walsh Securities, Inc. v. Cristo Property Management, Ltd. et al</u>, Civil Action 97-3496, ("the Litigation") which Robert A. Magnanini, Esq. has handled since its inception in 1997. The action seeks to recover direct, consequential and punitive damages arising from a residential real estate flipping scheme that defrauded the Debtor out of approximately 230 loans, over the course of at least sixteen (16) months, with a total amount of approximately $24 million dollars in principal, and, as of 2007, over $45 million dollars in accrued interest, over $5.5 million in attorney's fees and costs, the loss of a sale of the

2

company for over $420 million and finally, the destruction of the Debtor, with the loss of over 250 jobs in fourteen (14) offices in twelve (12) States.

7.  The action was first stayed, then administratively dismissed from June 9, 1998 until September 30, 2004, pending completion of numerous criminal prosecutions of many of the Defendants. A Third Amended Complaint was filed on January 31, 2005 and a present Fourth Amended Complaint was filed on July 10, 2009.

8.  Discovery has been substantially completed in the Litigation. The parties have attended multiple mediations and a settlement conference presided over by the Honorable Dickinson Debevoise, Judge of the United States District Court for the District of New Jersey. Judge Debevoise has advised the parties, that if the matters are not settled, the case will be assigned to a Judge, with instructions to proceed to trial of the issues in due haste.

### Claims Against Coastal

9.  In connection with the litigation, WSI has asserted claims against Coastal for civil RICO and common law fraud. Coastal has filed an Answer denying any involvement in the RICO enterprise and denying that it committed fraud on WSI.

10.  Coastal served as title agent to Commonwealth Land Title Insurance Company, Nations Title Insurance Company of New York, Inc. and Fidelity National Title Insurance Company of New York (collectively the "Title Insurance Defendants") and ran title searches, issued binders, title insurance policies and closing service protection letters to WSI without which WSI would not have closed on any of the fraudulent loans at issue in the Litigation. The

Title Insurance Defendants have filed crossclaims against Coastal for contribution and indemnification. Coastal has denied that it is liable to the Title Insurance Defendants for indemnification and contribution.

11. Coastal was insured by General Star, which agreed to defend Coastal in the Litigation, under a series of reservation of rights letters. Coastal had an insurance policy of $1 million in effect for the time period which is the subject of the Litigation. The insurance policy was a "wasting policy" in that the costs of defense were deducted from the coverage. The coverage had been depleted to less than $500,000.00 during the thirteen (13) years of litigation. General Star has taken the position that Coastal's policy only covered negligence claims and not the intentional torts asserted by WSI. One of the grounds for the defense of the indemnification and contribution claims asserted by the Title Insurance Defendants is that claims against Coastal sound in tort, while the claims against the Title Insurance Defendants sound in contract.

12. In addition to the inherent risk in any litigation and the wasting coverage, WSI has been advised by counsel for Coastal that a Bankruptcy Petition has been prepared for filing on behalf of Coastal, if the claims against Coastal cannot be settled.

13. On January 11, 2011, after months of informal negotiations, WSI, the Title Insurance Defendants, Coastal and General Star entered into a mediation, under the supervision of Robert E. Margulies, Esq. of Margulies, Wind & Herrington.

14. After extensive negotiations, WSI, Coastal, General Star and the Title Insurance Defendants agreed that a settlement of the claims against Coastal and its insured, General Star,

for the amount of $425,000.00 is prudent and reasonable.

15. To date, WSI and the Title Insurance Defendants have been unable to enter into a "Global Settlement" of WSI's claims against the Title Insurance Defendants. WSI has recently communicated a settlement demand to the Title Insurance Defendants and has been promised a response by mid-May.

16. To date, WSI and the Title Insurance Defendants have been unable to resolve their competing claims against the $425,000.00 of settlement funds to be delivered pursuant to the Coastal Settlement. If the parties remain unable to agree upon a consensual distribution of the Coastal Settlement proceeds, the parties have agreed to engage in a one half day mediation, in an attempt to reach agreement.

17. Annexed hereto and marked Exhibit "A" is a proposed Settlement Agreement and Release with regard to the claims against Coastal and General Star. Pursuant to said Settlement Agreement, the settlement proceeds will be held in escrow by Stone & Magnanini, LLP., pending a determination of the entitlement to such settlement proceeds.

18. WSI believes that the proposed settlement with Coastal and General Star is in the best interest of the Debtor and its Bankruptcy Estate.

**WHEREFORE,** Walsh Securities, Inc. respectfully requests the entry of the Order submitted herewith approving the proposed settlement between the Debtor and Coastal Title Agency annexed hereto as Exhibit "A" and authorizing the Debtor to take all steps necessary to consummate and memorialize said settlement, together with such other and further relief as is

just and equitable.

                              WASSERMAN, JURISTA & STOLZ, P.C.
                              Attorneys for Walsh Securities, Inc., Debtor

                              By: _____
                                  DANIEL M. STOLZ

Dated: May 2, 2011.