Gary F. Eisenberg, Esq.
HERRICK, FEINSTEIN LLP
One Gateway Center
Newark, New Jersey 07102
(973) 274-2000
Counsel for Plaintiff

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In Re:<br><br>WALSH SECURITIES, INC.,<br><br>                    Debtor. | Case No.: 10-44845 (NLW)<br><br>Chapter 11<br><br>Hon. Novalyn L. Winfield<br><br>Hearing Date:  May 23, 2011, 10:00 a.m. |

**OBJECTION OF CHEROKEE EQUITIES, LLC TO MOTION BY DEBTOR WALSH SECURITIES, INC. FOR APPROVAL OF SETTLEMENT AGREEMENT AND RELEASE WITH COASTAL TITLE AGENCY**

Cherokee Equities, LLC ("Creditor"), by way of objection to the motion (the "Motion") of the debtor Walsh Securities, Inc. ("WSI" or the "Debtor") for approval of Settlement Agreement and Release with Coastal Title Agency (the "Proposed Agreement"), respectfully shows the Court as follows:

1.      On November 9, 2010, the Debtor filed its Chapter 11 Petition in this case. The Debtor continues as a debtor-in-possession in this case. No Creditors Committee has been appointed.

2.      On or about January 4, 2011, Creditor filed a proof of claim in the amount of $1,133,939.96 against the Debtor (claim No. 2 on the claims registry for the Debtor) [1] .

---

[1] Only two proofs of claim have been filed against the Debtor - that of the Creditor and one in the amount of $5,950.65 by the IRS.

1

3. The Debtor's schedules list only five creditors. Creditor is, upon information and belief, one of only three non-affiliated creditors of the Debtor and, according to the Debtor's schedules, Creditor holds over 83% of the non-affiliate scheduled claims against the Debtor. The other two non-affiliate creditors appear to be professional firms.

4. On or about April 8, 2011, Creditor filed a plan and disclosure statement in this case. The Debtor's exclusivity has expired and the Debtors itself has not filed a plan of reorganization. Court has set June 7, 2011 as the hearing date to consider approval of the disclosure statement filed by Creditor.

5. Creditor previously has set forth the basis and background of its claims, particularly in the objection (the "Retention Objection") that the Creditor filed in opposition to a prior motion by the Debtor to retain counsel in this case (Docket entry 19 on the Court's electronic docket). Rather than repeat that information at length herein, Creditor respectfully refers the Court to the Retention Objection and incorporates by reference its statements regarding the basis and background of its claims.

6. Creditor has reviewed the Proposed Agreement and objects to the Court approving it at this time. The Proposed Agreement caps the Debtor's potential recovery, gives releases to other key parties and does so with no assurance that the Debtor will recover or receive any portion of the $425,000 that is at the heart of the Proposed Agreement. Moreover, in so doing, the Proposed Agreement appears to give additional rights to certain defendants identified in the Debtor's Motion as the "Title Insurance Defendants" and provides no assurance that creditors of the Debtor's estate will actually receive any of the $425,000 at issue. Thus, the Debtor appears to be giving releases of valuable claims in return for an ephemeral right to

mediate a possible recover at some point in the future. Creditor submits this is below the acceptable range of reasonableness.

7.  Bankruptcy Rule 9019(a) provides, in pertinent part, as follows:

> On motion by the trustee[2] and after notice and a hearing, the court may approve a compromise or settlement…

Fed. R. Bankr. P. 9019(a).

8.  Section 105(a) of the Bankruptcy Code further provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

9.  The standards by which courts evaluate a proposed compromise and settlement are well established. In essence, the settlement standards balance the probable success and potential costs of pursuing a claim or defense against the benefits and costs of the proposed settlement. In striking this balance, the court's responsibility is to canvass the issues to see whether the proposed settlement "falls below the lowest point in the range of reasonableness." In re Penn Central Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979). Accord In re Pennsylvania Truck Lines, Inc., 150 B.R. 595, 601 (E.D. Pa. 1992), affd, 8 F.3d 812 (3d Cir. 1993); In re Grant Broad. of Phila., Inc., 71 B.R. 390, 395 (Bankr. E.D. Pa. 1987). Accordingly, courts should only approve a compromise and settlement if it is fair and equitable and in the best interests of the estate and the debtor's creditors. Kranzdorf v. Green, 76 B.R. 974, 979 (E.D. Pa. 1987); In re Culmtech, Ltd., 118 B.R. 237, 240 (Bankr. M.D. Pa. 1990).

---

[2] A debtor in possession has all the rights and powers of a trustee. 11 U.S.C. § 1107.

3

10. In reviewing settlements, courts apply the following factors, in addition to reviewing the terms and conditions of the settlement itself:

> The probability of success in the litigation;
>
> The difficulty in collecting any judgment which may be obtained;
>
> The complexity of the litigation involved and expense, inconvenience and delay necessarily attendant to it; and
>
> The interest of creditors and stockholders with a proper deference to their reasonable views of the settlement.

Protective Comm. for Indep. Stockholders for TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968). See also In re Martin, 91 F.3d at 393; In re Paolino, 87 B.R. 8, 10 (E.D. Pa. 1988); In re Columbia Gas Sys., Inc., Case No. 91-803, 1995 WL 404892, at *1-2 (Bankr. D. Del. June 16, 1995); In re Culmtech, Ltd., 118 B.R. at 238; In re Grant Broad., 71 B.R. at 395.

11. In addition to these criteria, courts have considered additional factors. These additional factors include: (a) the competency and experience of counsel who support the settlement; (b) the relative benefits to be received by individuals or groups within the class; (c) the nature and breadth of releases to be obtained by the parties to the settlement; and (d) the extent to which the settlement is the product of arm's length bargaining. In re 47-49 Charles St., Inc., 209 B.R. 618, 620 (S.D.N.Y. 1997); In re Spielfogel, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997); In re Dow Corning Corp., 198 B.R. 214, 223 (Bankr. E.D. Mich. 1996).

12. When applying the above criteria to the facts of a particular case, a bankruptcy court does not have to conduct a mini-trial to determine the probable outcome of any claims waived in the settlement. In re Cajun Elec. Power Coop., Inc., 119 F.3d 349, 356 (5th Cir. 1997). Nor is a bankruptcy court required to conduct an evidentiary hearing as a prerequisite to approving a settlement. In re Depositer, 36 F.3d 582, 586 (7th Cir. 1994). The bankruptcy court must, however, gather all of the relevant facts and law so that it can make an informed,

intelligent, and objective decision with respect to approving the settlement. Depositer, 36 F.3d at 586. See also Cajun Electric Power Coop., 119 F.3d at 356.

13. The Proposed Agreement by its terms purports to provide for exchanges of general releases from the Debtor and the "Title Insurance Defendants" (as defined in the Debtor's Motion) to General Star and Coastal Title (Coastal Title being one of the title insurance company defendants in the litigation given rise to the Proposed Agreement, and General Star being Coastal Title's insurer). In addition, the Proposed Agreement provides for General Star to deposit $425,000.00 (the "Settlement Payment") into an escrow account requiring approval of General Star, the Debtor and the Title Insurance Defendants for release.

14. As the Debtor in the Motion notes, the Title Insurance Defendants have asserted competing claims to the Settlement Payment. The Debtor asserts that this creates a risk that the $425,000.00 Settlement Payment may be further reduced or other dissipated prior to it being available for distribution to the creditors of the Debtor. The Motion does not specify any facts from which one can assess the strengths or weaknesses of the indemnification and contribution claims asserted by the Title Insurance Defendants as a basis for reaching the Settlement Payment.

15. The Settlement Agreement suffers from at least one fundamental flaw. Because the Title Insurance Defendants continue to assert claims as to the Settlement Payment, its receipt into escrow represents merely an agreement by the Debtor and the Title Insurance Defendants to agree. An agreement to agree is generally unenforceable, and thus the ultimate benefit to the Debtor's estate from the payment of the Settlement Payment into escrow remains speculative.

16. Further, the Motion is bereft of any basis for any creditor of the Debtor to evaluate what is the likelihood that any of the proceeds will be paid ultimately to the Debtor's

5

estate. In addition, the Motion implicitly appears to concede to the Title Insurance Defendants a lien or setoff right as to the Settlement Payment. However, the Motion, while indicating the Debtor's basis for asserting claims against Coastal Title (and therefore a basis for Coastal Title's insurer to defend Coastal Title and pay on claims owed by Coastal Title), provides no basis for asserting or concluding that any of the Title Insurance Defendants have any claim against Coastal Title that is one for which General Star must provide insurance coverage.

17. This is important, because the Debtor (to the extent its claim is covered by insurance) has a stronger claim to the Settlement Payment than the Title Insurance Defendants. Indeed, Debtor's claim to the Settlement Payment may rise to the level of property of the Debtor's estate. To that extent, the Settlement Payment must then come into the Debtor's estate, to be distributed pursuant to the chapter 11 process, while relegating the Title Insurance Defendants to what they have - an unsecured indemnification or contribution claim against Coastal Title. The Debtor, by agreeing to put the Settlement Payment into escrow subject to a future resolution, is giving the Title Insurance Defendants a superior right to that payment vis-à-vis the Debtor's creditors than the Title Insurance Defendants would otherwise have.

18. Compounding matters, the Debtor has also not given any assurance that the funds ultimately payable into the estate from the Settlement Payment will be eligible for distribution in accordance with either a plan ultimately confirmed by the Court or otherwise distributed pursuant to court order and are consistent with the Bankruptcy Code. Without such assurance, the benefits to the estate's creditors remain ephemeral. If the Settlement Payment funds are not going to benefit the Debtor's creditors, then why should Coastal and General Star be released from claims to the Debtor? The release then becomes one in return for which the Debtor's

creditors will receive nothing. How does that benefit the estate? If the only correct answer is, not at all, then clearly the standards for approving a settlement cannot be met.

19. If the Debtor could assure some realization of funds by the estate, perhaps the calculus would be different, but the Motion contains no such assurance. Indeed, the Proposed Agreement caps the upside for Debtor regarding the Settlement Payment at $425,000.00. The Debtor's Motion refers to an agreement for mediation with the Title Insurance Defendants relating to the Settlement Payment's ultimate distribution as between the Title Insurance Defendants and the Debtor. However, the Proposed Agreement itself makes no reference to mediation of this dispute. Thus, even the occurrence of a mediation (which if successful might speedily resolve the Title Insurance Defendants' claim to the Settlement Payment and in such circumstance would then respond to some of the Creditor's questions above) is not assured to happen. Furthermore, the Debtor has not disclosed any timetable by which the mediation will occur, leaving Creditors to speculate as to when if ever the proceeds of the Settlement Payment or a portion of them may come into the estate.

20. Without derogating from the foregoing, Creditor objects to any party in interest in the Debtor's case from receiving any portion of the Settlement Payment on account of pre-petition claims without a *pro rata* distribution to Creditor. In particular, Creditor does object and will continue to object to any attempt by counsel for the Debtor to claim more than the Creditor believes is warranted under the retention of counsel approved by the Court.[3]

21. Accordingly, this is one of those rare instances where a proposed settlement is not in the best interest of the estate and thus should not be approved. Alternatively, this Court

---

[3] The underlying terms of the Retention Agreement are confidential and thus Creditor reserves the right to make further arguments regarding this point *in camera* or as the Court otherwise determines is appropriate so as to avoid disclosure of materials relating to the Retention Agreement that Creditor is holding in confidence pursuant to a confidentiality agreement between the Debtor and the Creditor.

HF 6484514v.1 #13923/0001

should conclude that insufficient information exists for the Court to make an informed determination as to whether or not this settlement is in the best interest of the estate.

22. Finally, the Motion does not address the question of how to handle such proceeds of the Settlement Payment as may ultimately be paid over to the Debtor. Unless proceeds of the Settlement Payment when and if released from the escrow account are required to be held by the Debtor without further distribution until further order of this Court, Creditor will otherwise lack assurance that the Settlement Agreement proceeds are not going to be dissipated improperly.

For the foregoing reasons, and to be supplemented at oral argument, Creditor respectfully requests that the Court either not approve the Proposed Agreement or condition its approval on further agreements between the Debtor and the other parties in interest in the Debtor's case so as to safeguard the concerns raised by Creditor above.

        HERRICK, FEINSTEIN LLP
        Attorneys for Cherokee Equities, LLC

        By: __/s/ Gary F. Eisenberg_____
            GARY F. EISENBERG

Dated: May 16, 2011

HF 6484514v.1 #13923/0001