<table>
<tr><td>

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-2(c)
**WASSERMAN, JURISTA & STOLZ, P.C.
225 Millburn Avenue - Suite 207
P.O. Box 1029
Millburn, New Jersey  07041
Phone: (973) 467-2700
Fax: (973) 467-8126
Counsel to Debtor
LEONARD C. WALCZYK, ESQ. (LW-4720)**

In Re:

**WALSH SECURITIES, INC.,**

                                 Debtor.

</td><td>

Case No.:  10-44845

Hon.  Novalyn L. Winfield

Chapter: 11

Hearing Date:

</td></tr>
</table>

## ORIGINAL PLAN OF REORGANIZATION PROPOSED BY PROPONENT
## WALSH SECURITIES, INC., DEBTOR-IN-POSSESSION

WALSH SECURITIES, INC., ("Debtor" or "Proponent"), hereby proposes the following Chapter 11 Plan of Reorganization (the "Plan") pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

**ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR ARE ENCOURAGED TO READ THIS PLAN IN ITS ENTIRETY.  SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN THIS PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVODE OR WITHDRAW THIS PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

The rules of construction set out in Section 102 of the Bankruptcy Code shall apply to the construction of the terms and provisions set forth in this Plan.

WALSH SECURITIES, INC.
Debtor-in-Possession and Plan Proponent

By:_____
          ROBERT WALSH

Dated: October '?, 2011

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1
      A.    Purpose of This Document..............................................................1
      B.    Deadlines for Voting and Objecting: Date of Plan Confirmation Hearing....2
      C.    Disclaimer ...................................................................................5

II.   BACKGROUND ....................................................................................7
      A.    Description and History of the Debtors' and Reasons for
            Bankruptcy Filing ........................................................................7
      B.    Significant Events During the Bankruptcy ........................................8
      C.    Projected Recovery of Avoidable Transfers .....................................9
      D.    Procedures Implemented to Resolve Financial Problems.....................9

III.  SUMMARY OF THE PLAN OF REORGANIZATION .............................9
      A.    General Overview .........................................................................9
      B.    Rules of Construction and Definitions.............................................10
      C.    Unclassified Claims ......................................................................17
            1.    Administrative Expenses and Fees ......................................17
            2.    Priority Tax Claims ..........................................................19
      D.    Classified Claims and Interests......................................................20
            1.    Classification of Claims and Interests...................................20
            2.    Classes of Secured Contingent Claims .................................21
            3.    Class of General Unsecured Claim ......................................21
            4.    Class of Interest Holder ....................................................22
      E.    Acceptance or Rejection of Plan.....................................................22
      F.    Means of Effectuating the Plan.......................................................23
            1.    Funding for the Plan.........................................................23
            2.    Disbursing Agent .............................................................23

IV.   THE EFFECTIVE DATE AND TREATMENT OF MISCELLANEOUS ITEMS..23
      A.    Executory Contracts and Unexpired Leases ......................................23
      B.    Retention of Jurisdiction................................................................24
      C.    Procedures for Resolving Contested Claims......................................26
      D.    Notices Under the Plan .................................................................26
      E.    The Effective Date .......................................................................27
            1.    Conditions Precedent to the Effective Date............................27
            2.    Notice of the Effective Date................................................27
            3.    Effect of Failure of Conditions............................................27
            4.    Right to Revoke, Withdraw or Modify..................................28
            5.    Effect of Withdrawal, revocation or Non-consummation..............28
      F.    Tax Consequences of Plan.............................................................28
      G.    Risk Factors ...............................................................................31

V.    CONFIRMATION REQUIREMENTS AND PROCEDURES ...............................32
    A.    Who May Vote or Object.....................................................................32
        1.    Who May Object to Confirmation of the Plan...............................32
        2.    Who May Vote to Accept/Reject the Plan.......................................33
            a.    What is an Allowed Claim/Interest......................................33
            b.    What is an Impaired Claim/Interest.....................................33
        3.    Who Is Not Entitled to Vote ..........................................................34
        4.    Who Can Vote in More Than One Class ...........................................34
        5.    Votes Necessary to Confirm the Plan..............................................35
        6.    Votes Necessary for a Class to Accept the Plan .............................35
        7.    Treatment of Non-accepting Classes ..............................................35
        8.    Request for Confirmation Despite Non-acceptance by
           Impaired Class(es) .........................................................................36
    B.    Liquidation Analysis..........................................................................36
    C.    Feasibility...........................................................................................37

VI.    EFFECT OF CONFIRMATION OF PLAN................................................................38
    A.    Discharge ............................................................................................38
    B.    Continuance of Automatic Stay Pending Issuance of Discharge..............38
    C.    Revesting of Property in the Debtor ....................................................39
    D.    Term of Injunctions or Stays and Injunction ......................................39
    E.    Modification of Plan ...........................................................................40
    F.    Post-Confirmation Conversion/Dismissal .........................................40
    G.    Post-Confirmation Quarterly Fees ....................................................41
    H.    Fractions of Cents ..............................................................................41
    I.    Payment of Less Than Ten ($10.00) Dollars ......................................41
    J.    Setoff .................................................................................................41
    K.    Time of Collection ..............................................................................42
    L.    Disputed Parties .................................................................................42
    M.    Headings ............................................................................................42
    N.    Severability ........................................................................................43
    O.    Reservation of Rights.........................................................................43
    P.    Governing Law ...................................................................................43
    Q.    Blank Ballots......................................................................................43
    R.    Binding Effect ....................................................................................43
    S.    Releases..............................................................................................44
    T.    Computation of time Periods ..............................................................44
    U.    Successors or Assigns ........................................................................45
    V.    Plan Controls......................................................................................45
    W.    Debtors' Professionals .......................................................................45
    X.    U. S. Trustee's Fees ...........................................................................45

# I.

## INTRODUCTION

WALSH SECURITIES, INC., ("Debtor" or "Proponent") is the debtor in this Chapter 11 bankruptcy case.  On November 9, 2010, the Debtor commenced his bankruptcy case by filing a Voluntary Chapter 11 petition under the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. §101 et seq.  This documents is the Chapter 11 plan ("Plan") proposed by the Debtor. In lieu of a separate "Disclosure Statement", this document has been conditionally approved by the United States Bankruptcy Court for the District of New Jersey (the "Court") as providing you with sufficient information to help you understand the Plan.

This is a reorganizing plan.  In other words, the Debtor seeks to accomplish payments under the Plan by using his income to make a distribution to creditors. This document contains information about the Debtor and describes how the Debtor proposes to repay his creditors. *Your rights may be affected.   You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.*

Proposed distributions under the Plan are discussed at pages 19 through 26 of this document.

### A.    Purpose of This Document

This document describes:

- The Debtor and significant events during the bankruptcy case,

- How this Plan proposes to treat claims or interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),

1

- Who can vote on or object to the Plan,

- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,

- Why the Debtor believes this Plan is feasible, and how the treatment of your claim or interest under the Plan compares to what you would receive on your claim or interest in liquidation, and

- The effect of confirmation of the Plan.

Be sure to read this Plan document as if it is confirmed, it establishes your rights.

**B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1.    *Time and Place of the Hearing to Confirm the Plan.*

The hearing at which the Court will determine whether to confirm the Plan will take place on _____, at _____ ___.M., Honorable Novalyn L. Winfield, U.S.B.J., at the United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, Third Floor, Newark, New Jersey 07102.

2.    *Deadline for Voting to Accept or Reject the Plan*

Ballots for acceptance or rejection of the Plan are being provided to Creditors in the Class of Claims entitled to vote to accept or reject the Plan, entitled to vote to accept or reject the Plan. After carefully considering this Plan, please indicate your vote with respect to the Plan on the enclosed ballot and return such ballot before the voting deadline to Wasserman, Jurista & Stolz, P.C., 225 Millburn Avenue, Suite 207, Millburn, New Jersey 07041, Attn: Leonard C. Walczyk,

2

Esq. on or before _____, 2011 (the "Voting Deadline").  Other forms of personal delivery of ballots including overnight delivery service, courier service, and delivery by hand are acceptable.  Facsimile transmissions are not acceptable.  Electronic mail transmissions are not acceptable.  There is no need to file your Ballot with the Clerk of the Bankruptcy Court.  If your ballot is damaged or lost, or if you do not receive a ballot to which you are entitled, you may request a replacement be contacting Leonard C. Walczyk, Esq., 973-467-2700, Wasserman, Jurista & Stolz, P.C., 225 Millburn Avenue, Suite 207, Millburn, New Jersey 07041

A failure to return a ballot will be deemed a vote for the Plan.  Any improperly completed or late ballot will not be counted.  Any ballot that indicates both an acceptance and rejection of the Plan will be deemed a vote to accept the Plan.  If no votes to accept or reject the Plan are received with respect to a particular class, the class will be deemed to have voted to accept the Plan.  If a creditor or interest holder casts more than one ballot voting the same Claim or Interest before the Voting Deadline, the latest-dated Ballot received before the Voting Deadline will be deemed to reflect the voter's intent and thus to supersede any prior ballots.  Voting Classes must vote all of their Claims within a particular Class under the Plan either to accept or reject the Plan and may not split their votes within a particular Class; thus, a ballot (or a group of ballots) within a particular Class received from a single Class Member that partially rejects and partially accepts the Plan will be deemed to have voted to accept the Plan.

*Confirmation of The Plan.*

Your vote on the Plan is important.  In order for the Plan to be accepted, of those Holders of Claims who cast ballots, the affirmative vote of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of classified Claims is required.  The affirmative vote of at

3

least two-thirds (2/3) in amount of Common Stock is required as well.

If certain Classes vote against the Plan, the Bankruptcy Court may still confirm the Plan if the Court finds that the Plan does not unfairly discriminate against the impaired Class or Classes voting against the Plan and accords fair and equitable treatment to those impaired Class or Classes. The Plan Proponent intend to request such a "cramdown" confirmation if any Class does not vote in favor of the Plan.

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan for _____, 2011at _____ __.M. (Eastern). Any party in interest may object to confirmation of the Plan. The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan, be served upon: (i) Wasserman, Jurista & Stolz, P.C., 225 Millburn Avenue, Suite 207, Millburn, New Jersey 07041, Attn: Leonard C. Walczyk, Esq., (ii) the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, New Jersey 07102; and, filed with the Court on or before 4:00 p.m. on _____, 2011, in the manner described in the order scheduling hearing on confirmation. The Confirmation Hearing may be adjourned from time to time without further notice other than by announcement in open court of the filing of a hearing agenda.

*Recommendations With Respect To The Plan.*

The Plan Proponent recommends that you accept the Plan by voting your ballot accordingly and timely returning your completed ballot in the pre-printed envelope provided.

If you are entitled to vote to accept or reject the plan, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to Wasserman, Jurista & Stolz, P.C., Attn: Leonard C. Walczyk, Esq., Counsel for Debtor, 225 Millburn Avenue, Suite

4

207, P.O. Box 1029, Millburn, New Jersey 07041. See section V.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by _____, 2011 or it will not be counted.

3.      *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to the confirmation of the Plan must be filed with the Court and served upon Wasserman, Jurista & Stolz, P.C., Attn: Leonard C. Walczyk, Esq., Counsel for Debtor, 225 Millburn Avenue, Suite 207, P.O. Box 1029, Millburn, New Jersey 07041 by _____, 2011.

4.      *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Leonard C. Walczyk, Esq., at Wasserman, Jurista & Stolz, P.C., counsel for Debtor, 225 Millburn Avenue, Suite 207, P.O. Box 1029, Millburn, New Jersey 07041, telephone number 973-467-2700, facsimile no. 973-467-8126, e-mail lwalczyk@wjslaw.com.

**C.      Disclaimer**.

The Bankruptcy Court's approval of this Plan does not constitute either a guaranty of the accuracy of the information contained herein or an endorsement of the Plan. This Plan is the only document authorized by the Bankruptcy Court to be used in connection with the solicitation of votes accepting the Plan. No representations other than those explicitly set forth in this Plan are authorized concerning the Debtor, including the value of his assets or the Claims of his creditors.

This Plan has been prepared pursuant to Section 1125(f)(i) of the Bankruptcy Code and

Rules 3016 and 3017.1 of the Federal Rules of Bankruptcy Procedure and is not necessarily in accordance with federal or state securities laws or other similar laws.

Except as otherwise specifically noted, the financial information contained herein has not been audited by a certified public accountant and has not necessarily been prepared in accordance with generally accepted accounting principles.

All parties in interest are encouraged to read the entire Plan carefully, including the exhibits, before deciding to vote either to accept or reject the Plan.  Holders of Claims should not, however, construe the contents of this Plan as providing any legal, business, financial, or tax advice and should consult with their own advisors.

*The Court has conditionally approved this document as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms.  The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this document does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted. The financial data relied upon and formulated in the Plan is based on financial information provided by the Debtor.  The Debtor as Plan Proponent represents that everything stated herein is true to the Debtor's best knowledge.*

[space intentionally left blank]

## II.

## BACKGROUND

**A.    Description and History of the Debtor and Reasons for Bankruptcy Filing.**

The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in this Court on November 9, 2010.  No Trustee has been appointed.

The Debtor was formerly a large mortgage business, with fourteen (14) offices in twelve (12) states, approximately 175 employees and over 1,600 independent brokers.  The Debtor at one time produced over $660 million of mortgages a year.  Robert Walsh is the President, sole officer, director and majority owner of WSI.  Prior to forming WSI, Mr. Walsh was the President of Carteret Savings Bank, which was New Jersey largest savings and loan.

In 1997, the Debtor commenced an action in the United States District Court for the District of New Jersey, against a multitude of defendants.  In its Complaint, the Debtor alleges that it was the victim of a fraudulent scheme perpetrated by a large number of mortgage companies, real estate appraisers, attorneys and title companies, which ultimately induced WSI to purchase a large number of loans on real properties where the prices had been inflated.  This fraud scheme ultimately led to the Debtor's demise.

Robert Walsh has never been implicated in any of the wrongdoing, and in fact, has spent the last thirteen (13) years of his life pursuing redress against the perpetrators of the fraud through the aforementioned litigation.    Robert Walsh until recently was also a Chapter 11 Debtor in Possession with his case pending before this Court, which case has been dismissed.

The Debtor is represented in the aforementioned litigation by Stone & Magnanini, LLP, a prestigious and capable litigation firm.  Stone & Magnanini is handling certain litigation pending

7

in the United States District Court for the District of New Jersey, entitled <u>Walsh Securities, Inc.</u>
<u>v. Cristo Property Management, Ltd. et al</u>, Civil Action 97-3496, ("the Litigation" or "the RICO
Action") which Robert A. Magnanini, Esq. has handled since its inception in 1997.  The action
seeks to recover direct, consequential and punitive damages arising from a residential real estate
flipping scheme that defrauded the Debtor out of approximately 230 loans, over the course of at
least sixteen (16) months, with a total amount of approximately $24 million dollars in principal,
and, as of 2007, over $45 million dollars in accrued interest, over $5.5 million in attorney's fees
and costs, the loss of a sale of the company for over $420 million and finally, the destruction of
the Debtor, with the loss of over 250 jobs in fourteen (14) offices in twelve (12) States.

The action was first stayed, then administratively dismissed from June 9, 1998 until
September 30, 2004, pending completion of numerous criminal prosecutions of many of the
Defendants.  A Third Amended Complaint was filed on January 31, 2005 and a present Fourth
Amended Complaint was filed on July 10, 2009.  Discovery has been substantially completed in
the Litigation.   The parties have attended multiple mediations and a settlement conference
presided over by the Honorable Dickinson Debevoise, Judge of the United States District Court
for the District of New Jersey.  Judge Debevoise has advised the parties, that if the matters are
not settled, the case will be assigned to a Judge, with instructions to proceed to trial of the issues
in due haste.

### B.    Significant Events During the Bankruptcy

The Court has approved the employment of the following professionals: Wasserman,
Jurista & Stolz, P.C., 225 Millburn Avenue, Suite 207, P.O. Box 1029, Millburn, New Jersey
07041 as bankruptcy counsel; Robert Magnanini, Esq., Stone & Magnanini, LLP, 150 J.F.K.

Parkway, Short Hills, NJ 07078 as special litigation counsel for the Debtor.

The Section 341(a) Meeting of Creditors was held on December 15 2010 and the Court is conducting a telephone Status Conference on June 14, 2011.  The Debtor has filed its schedule of assets, liabilities and financial affairs.

### C.      Projected Recovery of Avoidable Transfers.

The Debtor does not intend to pursue preference, fraudulent conveyance or other avoidance actions as none are contemplated at this time.  The Debtor is also not currently contemplating other significant legal proceedings other than that already referenced to above.

### D.      Procedures Implemented to Resolve Financial Problems.

The aforesaid litigation continues to proceed toward trial in the event summary judgment motion is denied.  Other than the litigation referenced in Section II. A. above, the Debtor has no other assets, income or operations.

**III.**

**SUMMARY OF THE PLAN OF REORGANIZATION**

### A.      General Overview

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code.  The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive under the Plan.

This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors from proceeds derived from the litigation described in Section II. A. above, either through settlement or by collection or judgment obtained after trial and

9

resolution of any appeals. This Plan provides for one (1) class of unsecured priority claims, two (2) classes of contingent, unliquidated secured claims and one (1) class of general unsecured claims, which includes the deficiency claims of the classes of contingent, unliquidated secured claims, to the extent they exist, once all collection efforts from underlying collateral and co-obligors have been exhausted. Unsecured priority and general unsecured creditors holding allowed claims will receive a single lump sum payment of up to 100% of their claims from the net proceeds  (after administration, attorney's and experts fees and costs) derived from the litigation of the personal injury causes of action, once the causes of action have been settled or actually litigated to conclusion, from which the unsecured creditors will share *pro rata,* in the event the net proceeds from such litigation are insufficient to satisfy all such claims in full. This Plan also provides for the payment of administrative claims in full on the effective date of the plan. Priority tax claims, if any, shall also be paid in full on the effective date.

All creditors should refer to Article III.D. of this Plan for information regarding the precise treatment of their claims. This document provides detailed information regarding this Plan and the rights of creditors. **Your rights may be affected. You should read this document carefully and discuss it with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

B.      **Rules of Construction and Definitions**

a.      <u>**Rules of Construction**</u>:

(1)      In the Plan, unless otherwise provided, the capitalized terms shall have the meanings set forth in Section b. of this Article.

(2)      Any capitalized term used in this Plan that is not defined in Section b. of this

Article shall have the meaning ascribed to such term in the Bankruptcy Code.

(3)    The rules of construction used in Section 102 of the Bankruptcy Code apply to this Plan.

(4)    For purposes of this Plan, the terms in Section b. of this Article and in the Bankruptcy Code shall apply equally to the singular, plural and possessive forms and masculine, feminine and neuter genders of the defined terms.

(5)    All of the terms in Section b of this Article are intended to be, and hereby are, part of the substantive provisions of this Plan and have the same force and effect as any other provision of this Plan.

**b.    Definitions:**

1.    **Administrative Expense** shall mean any cost or expense of administration of the Chapter 11 case allowable under Section 507(a) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred by the Debtor, any indebtedness or obligation incurred or assumed by the Debtor in connection with the conduct of their financial affairs or for the acquisition or lease of property or the rendition of services to the Debtor, all allowances of compensation and reimbursement of expenses, any fees or charges assessed against the estate of the Debtor under Chapter 123, Title 28, of the United States Code, and the reasonable fees and expenses incurred by the Proponent in connection with the proposal and confirmation of this Plan.

2.    **Allowed** when used as an adjective preceding the words "Claims", shall mean any Claim against the Debtor, proof of which was filed on or before the date designated by

11

the Bankruptcy Court as the last date for filing proofs of claim against such Debtor, or, if no proof of claim is filed, which has been or hereafter is listed by the Debtor as liquidated in an amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed with the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been interposed and such Claim has been allowed in whole or in part by a Final Order.  Unless otherwise specified in the Plan, "Allowed Claim" shall not, for purposes of computation of distribution under the Plan, include interest on the amount of such Claim from and after the Petition Date.

3.    **Allowed Administrative Expense** shall mean any Administrative Expense allowed under Section 507(a) of the Bankruptcy Code.

4.    **Allowed Unsecured Claim** shall mean an Unsecured Claim that is or has become an Allowed Claim.

5.    **Ballot:** The form(s) distributed to Creditors with this Plan and the Disclosure Statement to be used by such Creditors to vote to accept or reject this Plan pursuant to Section 1126 of the Bankruptcy Code and Bankruptcy Rule 3018.

6.    **Bankruptcy Code** shall mean the Bankruptcy Reform Act of 1978, as amended, and as codified in Title 11 of the United States Code.

7.    **Bankruptcy Court** shall mean the United States Bankruptcy Court for the District of New Jersey having jurisdiction over this Chapter 11 Case and, to the extent of any reference made pursuant to 28 U.S.C. Section 158, the unit of such District Court constituted pursuant to 28 U.S.C. Section 151.

8. **Bankruptcy Rules** shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 28 U.S.C. Section 2075 and also referred to as the Federal Rules of Bankruptcy Procedure.

9. **Bar Date** shall mean March 15, 2011 as established by the Bankruptcy Court as the last date by which non-government Creditors may file proofs of claims in this Chapter 11 Case.

10. **Business Day** means and refers to any day except Saturday, Sunday, and any other day on which commercial banks in New Jersey are authorized by law to close.

11. **Chapter 11 Case** shall mean this case under Chapter 11 of the Bankruptcy Code in which Walsh Securities, Inc. is the Debtor.

12. **Claim** shall mean any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.  All claims as such term is defined in Section 101(5) of the Bankruptcy Code.

13. **Class** shall mean a grouping substantially similar Claims for common treatment thereof pursuant to the terms of this Plan.

14. **Code** shall refer to Title 11 of the United States Code, otherwise known as the Bankruptcy Code.

15. **Confirmation** shall mean the entry of an Order by this Court approving

13

the Plan in accordance with the provisions of the Bankruptcy Code.

16.    **Confirmation Hearing** shall mean a hearing conducted before the Bankruptcy Court for the purpose of considering confirmation of the Plan.

17.    **Confirmation Order** shall mean an Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

18.    **Creditor** shall mean any person that has a Claim against the Debtor that arose on or before the Petition Date or a Claim against the Debtor' estate of any kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code.    This includes all persons, corporations, partnerships, or business entities holding claims against the Debtor.

19.    **Debt** means, refers to and shall have the same meaning ascribed to it in Section 101(12) of the Code.

20.    **Debtor** shall mean Walsh Securities, Inc.

21.    **Disbursing Agent** shall mean the Debtor, Debtor's counsel, or any party appointed by and subject to Court approval, which shall effectuate this Plan and hold and distribute consideration to be distributed to holders of Allowed Claims pursuant to the provisions of the Plan and Confirmation Order.

22.    **Disclosure Statement** means and refers to the Disclosure Statement filed by the Debtor as required pursuant to Section 1125 et seq. of the Bankruptcy Code.

23.    **Effective Date** shall mean the first Business Day on which all of the conditions specified in Section IV.E. of this Plan have been satisfied; provided, however, that if a stay of the Confirmation Order is in effect on such date, the Effective Date will be the first Business Day after such stay is no longer in effect.

14

24.     **Distribution Date** shall mean the twentieth day after all Administrative Expense Claims, Priority Claims, and Unsecured Claims are allowed or disallowed by the Bankruptcy Court.

25.     **Final Order** shall mean an order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court which, not having been reversed, modified, or amended, and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become final and is in full force and effect.

26.     **Impaired** when used as an adjective preceding the words "Class of Claims", shall mean that the Plan alters the legal, equitable, or contractual rights of the members of that class.

27.     **Person** shall mean an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government or any political subdivision thereof or other entity.

28.     **Petition Date** shall mean November 9, 2010, the date on which the Debtor filed his petition for relief commencing this Chapter 11 Case.

29.     **Plan** shall mean the Plan of Reorganization filed in these Proceedings, together with any additional modification and amendments.

30.     **Priority Non-Tax Claim** shall mean a Claim entitled to priority under Sections 507(a)(1), (3), (4), (5), (6) or (7) of the Bankruptcy Code, but only to the extent it is entitled to priority in payment under any such subsection.

31.     **Priority Tax Creditor** shall mean a Creditor holding a Priority Tax

15

Claim.

32.     **Priority Tax Claim** shall mean any Claim entitled to priority in payment

under Section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority

under such subsection.

33.     **Proceedings** shall mean this Chapter 11 Case of the Debtor.

34.     **Professional Persons** means and refers to all attorneys, accountants,

appraisers, consultants, and other professional retained or to be compensated pursuant to an

Order of the Court entered under Section 327, 328, 330, or 503(b) of the Bankruptcy Code.

35.     **Professional Claim** means and refers to a claim by any and all

professionals as provided for in Sections 327, 328, 330 and 503(b) of the Bankruptcy Code.

36.     **Proponent** means the Debtor Walsh Securities, Inc.

37.     **Reorganized Debtor** means the Debtor after confirmation of the Plan.

38.     **Secured Claim** means and refers to a Claim which is secured by a valid

lien, security interest, or other interest in property in which the Debtor have an interest which has

been perfected properly as required by applicable law, but only to the extent of the value of the

Debtor' interest in such property, determined in accordance with Section 506(a) of the

Bankruptcy Code.

39.     **Unsecured Claim** shall mean any Claim against the Debtor which arose

or which is deemed by the Bankruptcy Code to have arisen prior to the Petition Date for such

Debtor, and which is not (i) a secured claim pursuant to Section 506 of the Bankruptcy Code, as

modified by Section 1111(b) of the Bankruptcy Code, or (ii) a Claim entitled to priority under

Section 503 or 507 of the Bankruptcy Code.  "Unsecured Claim" shall include all Claims against

16

the Debtor that are not expressly otherwise dealt with in the Plan.

40.  **Other Definitions** a term used and not defined herein but that is defined in the Bankruptcy Code shall have the meaning set forth therein.  The words "herein", "hereof", "hereto", "hereunder", and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.  Moreover, some terms defined herein are defined in the section in which they are used.

## C.   Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Proponent has not placed the following claims in a class.  The treatment of these claims is provided below.

### 1.   Administrative Expenses and Fees

Administrative expenses are claims for costs or expenses of administering the Debtor' Chapter 11 case which are allowed under Code Section 503(b).  Fees payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee were also incurred during the Chapter 11 Case.  The Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

Each holder of an Allowed Administrative Expense Claim shall be paid by the Disbursing Agent (a) the full amount of such Allowed Administrative Expenses Claim in cash, without interest, on the later of (i) the Effective Date or as soon thereafter as is practicable; or (ii) the date on which such Allowed Administrative Expense Claim becomes due and payable

pursuant to the terms thereof, the agreement upon which such Allowed Administrative Expense Claim is based, or within sixty (60) days of any applicable Final Order of the Bankruptcy Court allowing the Administrative Expense Claim or (b) in such amount on such other date and upon such other terms as may be contained in a Final Order or as agreed upon between the holder of such Allowed Administrative Expense Claim and the Disbursing Agent.

All requests for payment of Administrative Expense Claims, including applications for compensation for professionals under Section 330 of the Bankruptcy Code, shall be filed with the Bankruptcy Court and served on the Debtor' counsel no later than sixty (60) days from the Confirmation Date. Any Administrative Expense Claim for which an application or request for payment is not filed and served within the time period set forth in the preceding sentence, shall be deemed to have been discharged on the Confirmation Date and forever barred. However, the foregoing shall not apply to the Debtor's litigation counsel Stone and Magnanini, who shall submit their fee application at the conclusion of the litigation referenced in Section II. A. above.

### Court Approval of Professional Compensation and Expenses Required:

The Court must approve all professional compensation and expenses. With the exception of Stone and Magnanini, each professional person requesting compensation in the case pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy code shall file an application for allowance of final compensation and reimbursement of expenses not later than sixty (60) days after the Confirmation Date. Nothing herein shall prohibit each professional person from requesting interim compensation during the course of this case pending Confirmation of this Plan. No motion or application is required to fix fees payable to the Clerk's Office or the Office of the United States Trustee, as those fees are determined by statute. Stone and Magnanini shall

18

submit its final fee application within sixty (60) days of the conclusion of the litigation described in Section II. A. above.

The following chart lists all of the Debtor' unpaid administrative fees and expenses, an estimate of future professional fees and other administrative claims and fees and their treatment under the Plan:

| CLAIM TYPE | AMOUNT ESTIMATED | TREATMENT |
|---|---|---|
| Expenses Arising in the Ordinary Course of Financial Affairs After the Petition Date | $0.00 | Any such claims would be paid in full on the effective date of the Plan, or according to the terms of the obligation if later. |
| Estimated Professional Compensation to Wasserman, Jurista & Stolz, P.C. Attorneys for the Debtor | $75,000.00 | Paid in full on the Effective Date of the plan. |
| Clerk's Office Fees | $ Unknown | Paid in full on Effective Date of the Plan |
| Administrative expenses of professionals estimated professional compensation to Stone & Magnanini | $5,500,000.00 | Paid in full on the Effective Date of the Plan. |
| Office of the U.S. Trustee | $ Unknown | Paid in full on the Effective Date of the Plan. |
| **ESTIMATED MINIMUM TOTAL:** | **$5,575,000.00** | |

2.    **Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8).  The Code requires that each holder of such a Section 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years from the date of the filing of the bankruptcy petition.  No priority

19

tax claims have been scheduled by the Debtor, nor filed by any taxing authorities in this case.

The following chart lists all of the Debtor's known section 507(a)(8) priority tax claims and their treatment under the Plan:

| Description | Amount Owed | Treatment |
|---|---|---|
| Internal Revenue Service | $5,950.65 | Paid in full on Effective Date. |

**D.    Classified Claims and Interests**

**1.    Classification of Claims and Interests**

The Debtor believes that the Plan meets the classification requirements of the Bankruptcy Code which require that a plan of reorganization place each claim or interest into a class with other claims or interests which are "substantially similar."

**a.  Class Categories**

The following classes of Claims and Interests are designated pursuant to and in accordance with section 1123(a)(1) of the Bankruptcy Code, which classes shall be mutually exclusive:

| CLASS | CLASS NAME | STATUS |
|---|---|---|
| Class 1 | Secured, Contingent  Claim of Cherokee Equities, LLC | Impaired/Entitled to Vote |
| Class 2 | General Unsecured Claims | Impaired/Entitled to Vote |
| Class 3 | Allowed Interests | Impaired/Entitled to Vote |

20

## 2.    Classes of Secured, Contingent Claims

Secured, Contingent Claims are claims secured by liens on property serving to collateralize such claims, and for which there are other individuals or entities primarily liable for the obligations due to the claimholder.   The following represents the class containing Debtor's secured, contingent pre-petition claims and its treatment under this Plan:

| CLASS# 1 | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| SECURED CONTINGENT CLAIM OF CHEROKEE EQUITIES, INC. | This creditor filed proof of claim no. 2 on JAN. 4, 2011 in the amount of $1,133,939.96, which is secured by certain real property and other assets owned by third party co-obligors.  This claimholder has commenced collection and foreclosure actions to collect on the outstanding amounts due. | No | Impaired. Entitled to vote on Plan | This claimholder shall receive no distribution from this bankruptcy estate until all collection activity against the collateral securing this loan and the co-obligors liable for this claim are exhausted.   Any resulting deficiency claims will be treated as a Class 2 General Unsecured Claim. |

## 3.    Class of General Unsecured Claims

General unsecured claims are uncollateralized claims not entitled to priority under Code Section 507(a).  The following chart identifies this Plan's treatment of the class containing all of the Debtors' general unsecured claims, and any allowed deficiency claims held by any of the Debtors' secured contingent creditors set forth in Class 1.

21

| CLASS # 2 | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) |
|---|---|---|---|
| Holders of Allowed General Unsecured Claims | General unsecured claims Estimated Total amt of scheduled claims (other than deficiency claims of Class 1) (LeClair Ryan $200,000 Investment 3, LLC $6,700,000 Marc Freidman, Esq. $15,000 Robert Walsh $2,500,000. | Impaired - entitled to vote on Plan | Holders of Allowed General Unsecured Claims, shall be paid pro rata up to 100 % of the allowed amount of their claims in a single lump sum payment on the the Effective Date of the Plan |

### 4.    Class of Interest Holders

Interest holders are the Debtor, the parties who hold ownership interests in property of this bankruptcy estate.  The following chart identifies the Plan's treatment of this class of interest holders:

| CLASS #3 | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| Interests of Robert Walsh, Stephanie Walsh and Melissa Walsh | Shares in Walsh Securities, Inc. | Impaired | Holders of interests in the Debtor shall receive no distribution unless and until all administrative, priority and Class 1 and 2 claims are satisfied in full, in which case Interest Holders shall receive all remaining funds in the estate. |

### E.    Acceptance or Rejection of Plan

Each impaired class of Creditors with claims against the Debtor's estate shall be entitled to vote separately to accept or reject the Plan.  A class of Creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds in the aggregate dollar amount and more than one-

half in number of holders of the allowed Claims of such class that have accepted or rejected the

Plan. In the event that any impaired class of Creditors or Interest holders shall fail to accept the

Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Proponent reserves the

right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b)

of the Bankruptcy Code.

**F.      Means of Effectuating the Plan**

**1.      Funding for the Plan**

The Plan will be funded by the proceeds from settlement or litigation on the merits and

subsequent collection on the litigation claims that are described more fully in Section II. A.

above.

**2.      Disbursing Agent**

Wasserman, Jurista & Stolz, P.C., counsel for the Debtor, shall act as the disbursing agent

for the purpose of making initial distributions to administrative, priority and general unsecured

creditors provided for under the Plan.

**IV.**

**THE EFFECTIVE DATE AND TREATMENT OF MISCELLANEOUS ITEMS**

**A.      Executory Contracts and Unexpired Leases**

On the Effective Date, all executory contracts not already assumed or rejected by order

the Bankruptcy Court shall be assumed. The order confirming the Plan shall constitute an order

approving the assumption of the lease or contract. If you are a party to a contract or lease and

have any objection regarding treatment of your contract or lease, you must file and serve your

objection to the Plan within the deadline for objecting to the confirmation of the Plan.

23

The Debtor asserts that it is not a party to, and thus is not in default under any such leases, but if you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time. The Plan rejects all leases and unexpired leases and executory contracts to which the Debtor is a party.

All proofs of claim with respect to claims arising from the cure of any arrears on the assumed leases or rejection damage claims must be filed with the Bankruptcy Court and served on Debtor's Counsel within the earlier of (i) the date set forth for filing claims in any order of the Bankruptcy Court approving such rejection or (ii) thirty (30) days after the Confirmation Date. Any such claims, proofs of which are not filed timely, will be barred and will not be entitled to a distribution in this case.

**B.      Retention of Jurisdiction.**

The Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, to determine the final allowance or disallowance of all Claims affected by the Plan, and to make such orders as are necessary or appropriate to carry out the provision of this Plan.

In addition, the Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under Section 1142, sub-paragraphs (a) and (b) of the Bankruptcy Code. If the Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this Section, or if the Debtor or the Reorganized Debtor elect to bring an action or proceeding in any other forum, then this Section shall have no effect

24

upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority or commission having competent jurisdiction over such matters.

The Court will also retain jurisdiction for the following purposes:

(a)    To determine the allowance, classification or priority of Claims upon objection by any party interest with standing to bring such objection or proceeding.

(b)    To construe and to take any action to enforce and execute this Plan, the Confirmation Order or any other order of the Court, issue such orders as may be necessary for the implementation, execution, performance and consummation of this Plan and all matters referred to herein, and determine all matters that may be pending before the Court in the Bankruptcy Case on or before the Effective Date with respect to any entity, all notwithstanding any otherwise applicable non-bankruptcy law.

(c)    To determine any and all applications for allowance of compensation and expense reimbursement of professionals for periods on, before or after the Effective Date.

(d)    To determine whether to allow or disallow any request for payment of an Administrative Expense Claim.

(e)    To hear and determine all litigation regarding the rejection or assumption and assignment of Executory Contracts or Unexpired Leases and the allowance of any Claims resulting therefrom.

(f)    To determine all applications, adversary proceedings, contested matters and other litigated matters, and settlements thereof, instituted on, before or after the Effective Date, including, without limitation, any Claims held by the Estate against any party, arising under Section 544, 547, 548, 549 and 550 of the Bankruptcy Code, or any other applicable

provision of the Bankruptcy Code.

(g)      To determine such other matters and for such other purposes as may be provided in the Confirmation Order.

(h)      To modify this Plan under Section 1127 of the Bankruptcy Code, to remedy any apparent nonmaterial defect or omission in this Plan or to reconcile any nonmaterial inconsistency in the Plan so as to carry out its intent and purposes.

(i)      To determine all questions and disputes regarding title to the assets of the Debtor or their Estate.

(j)      To enter an Order or final decree closing the Bankruptcy Case.

**C.      Procedures for Resolving Contested Claims**

Objections to Claims and interests, except for those Claims more specifically deemed Allowed in the Plan, may be filed by the Reorganized Debtor or any party in interest up to and including sixty (60) days following the entry of the Confirmation Order.

**D.      Notices under the Plan**

All notices, requests or demands with respect to his Plan shall be in writing and shall be deemed to have been received within five (5) days of the date of mailing, provided they are sent by registered mail or certified mail, postage prepaid, return receipt requested, and if sent to the Proponent, addressed to:

Wasserman, Jurista & Stolz, P.C.
Attention: Leonard C. Walczyk, Esq.
225 Millburn Avenue, Suite 207
Millburn, New Jersey 07041
Attorneys for Debtor

With a copy to:

26

Mr. Robert Walsh, President
Walsh Securities, Inc.
46 Laura Lane
Morristown, New Jersey 07960

**E.    Effective Date**

**1.  Conditions Precedent to the Effective Date.**  This Plan shall not become effective unless and until it has been confirmed and all of the following conditions have been satisfied in full:

> a.    The Confirmation Order shall have been entered, and no stay or injunction shall be in effect precluding the consummation of the payments contemplated by this Plan and such Confirmation Order shall not have been modified or vacated on appeal;

> b.    All statutory fees then due and payable to the United States Trustee shall have been paid in full;

> c.    All DIP claims, including all claims of administrative professionals in this case have been indefeasibly paid in full in Cash;

> d.    The litigation described hereinabove in Section II. A. has resulted in the Debtor's receipt of cash by way of settlement with the defendants or litigation to the point of collection of judgment.

**2.  Notice of the Effective Date.**  Once all of the foregoing conditions precedent have been met, the Court and claimholders will receive notice from the Debtor of the Effective Date.

**3.    Effect of Failure of Conditions.**    In the event that the Effective Date does not occur, upon notification submitted by the Debtor to the Court: (a) the Confirmation Order shall be vacated, (b) no Distributions under this Plan shall be made, (c) the Debtor and all holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding

27

the Confirmation Date as though the Confirmation Date had never occurred, and (d) the Debtor's

obligations with respect to Claims and Interests shall remain unchanged and nothing contained in

this Plan shall constitute or be deemed a waiver or release of any Claims or Interests by or

against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or

any person in this Chapter 11 case or in any further proceedings involving the Debtor.

**4. Right to Revoke, Withdraw or Modify.**   The Debtor reserves the right to revoke or

withdraw this Plan at any time prior to the Effective Date. The Debtor may alter, amend or

modify the Plan at any time prior to the Confirmation Date and thereafter as provided in Section

1127(b) of the Bankruptcy Code.

**5. Effect of Withdrawal, Revocation, or Non-Consummation.**   If the Debtor revokes

or withdraws this Plan prior to the Effective Date, or if the confirmation Date or the Effective

date does not occur, this Plan, any settlement or compromise embodied in this Plan, the

assumption or rejection of executory contracts, unexpired leases, exculpations or any other

releases provided for in this Plan shall be null and void.  In such event, nothing contained herein,

and no acts taken in preparation for the consummation of this Plan, shall be deemed to constitute

a waiver or release of any Claims by or against, or interests in, the Debtor or any other Person, to

prejudice in any manner the rights of the Debtor or any Person in any further proceedings

involving the Debtor, or to constitute an admission of any sort by the Debtor or any other Person.

**F.**     **Tax Consequences of Plan**

**CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE
PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR
OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.** The following disclosure of

possible tax consequences is intended solely for the purpose of alerting readers to possible tax issues this Plan may present to the Debtor. The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The following are some of the tax consequences that the Plan may have on the Debtor's tax liability:

A description of certain federal income tax consequences of the consummation of the Plan is provided below. The description of tax consequences is provided for information purposes only and is subject to significant uncertainties. No tax opinion has been sought with respect to any tax consequences of the Plan, and no tax opinion is given by this Disclosure Statement. Moreover, the discussion below is based upon information which has been provided by the Debtor which has not been independently verified by any Professional or third party. The discussion below is based upon the Internal Revenue Code (the "IRC"), regulations promulgated thereunder, judicial decisions, and published administrative rulings and pronouncements of the Internal Revenue Service as in effect on the date hereof. Legislative, judicial, or administrative changes or interpretations enacted or promulgated in the future could alter or modify the following analysis and conclusions. Furthermore, any such changes could be retroactive, and could significantly affect the federal income tax consequences discussed below. No representations are made regarding the particular tax consequences of the Plan to any holder of a Claim or Interest. Each holder of a Claim or Interest should consult its own tax adviser regarding federal, state, local and, if applicable, foreign, tax consequences of the Plan.

Holders of Allowed Claims are likely to recognize a gain or loss equal to the amount realized under the Plan in respect of their Claims less their respective tax bases in their Claims. The amount realized for this purpose will generally equal the sum of the cash, discounted to present value, received by holders under the Plan in respect of their Claims. Any gain recognized by the holder of an Allowed Claim will generally be treated as capital gain, provided that the Claim represented a capital asset in such holders' hands. The character of any gain or loss recognized will also depend on a number of other factors, including the tax status of the holder, whether the Claim was purchased at a discount, and whether and to what extent the Holder has previously claimed a bad debt deduction with respect to the Claim. The capital gain will be considered long term with respect to Claims held for more than one year, and short term with respect to claims held for one year or less. The holders' aggregate tax basis for any consideration received under the Plan will generally equal the amount realized. The holding period for any consideration received under the Plan will generally begin with the date following the receipt of such consideration.

Holders of Allowed Claims not previously required to have included in their gross income any accrued but unpaid interest on a Claim may be treated as receiving taxable interest income to the extent any consideration received under the Plan is allocable to such interest. Holders previously required to include in their gross income any accrued but unpaid interest on a Claim may be entitled to recognize a deductible loss to the extent such interest is not satisfied under the Plan. Holders of Allowed Claims constituting installment obligations for tax purposes may be required to recognize currently any gain remaining with respect to the obligations if pursuant to the Plan the obligation is considered to be satisfied at other than its face value,

30

distributed, transmitted, sold or otherwise disposed of within the meaning of Section 453 (b) of the IRC.

A holder who under the Plan receives in respect of its Allowed Claim an amount less than the holders' tax basis in such Claim may be entitled in the year of receipt or in an earlier year to a bad debt deduction in some amount under Section 166 of the IRC or a worthless securities deduction under Section 165 (g) of the IRC. A holder of an Allowed Claim may be entitled to a bad debt deduction with respect to such Claim only if (a) such holder is a corporation, or (b) such Claim constituted a debt either (i) created or acquired (as the case may be) in connection with a trade or business of such holders or (ii) debt the loss from the worthlessness of which is incurred in such Holder's trade or business. A holder that has previously recognized a bad debt deduction with respect to its Claim, however, may be required to include in its gross income (as ordinary income) any amounts received under the Plan to the extent such amounts exceed the holders' adjusted basis in such Claim.

G.      **Risk Factors**

In the event that the Debtor does not realize a cash recovery from the litigation described in Section II. A. above, either by way of settlement or litigation to the point of judgment and collection thereon, there may be no funds available to begin Plan payments, which would result in an ultimate conversion of this case to one under Chapter 7 of the Bankruptcy Code.

The Proponent believes that the Plan is viable and will meet all requirements of confirmation.  You are encouraged to supplement this summary with your own analysis and evaluation of this Plan in its entirety, and in consultation with your own advisors.

31

## V.

## CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider. The Proponent CANNOT and DO NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan. Some of the requirements include that the Plan must be proposed in good faith, that creditors or interest holders have accepted the Plan, that the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and that the Plan is feasible. These requirements are not the only requirement for confirmation.

A.    **Who May Vote or Object**

1.    **Who May Object to Confirmation of the Plan**

In this case the Plan Proponent believes that Classes 1, 2 and 3 are impaired classes and that holders of claims in these class are therefore entitled to vote to accept or reject the Plan.

Any party in interest may object to the confirmation of the Plan, but as explained below not every one is entitled to vote to accept or reject the Plan.

### 2.    Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim that is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

#### a.    What Is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

**THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS MARCH 15, 2011.**

A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

#### b.    What is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is <u>impaired</u> under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general

33

unsecured claims is impaired if the Plan fails to pay the members of that class 100% of their claim plus interest.

In this case, Class 1 of Secured Contingent Claims and Class 2 of unsecured creditors are impaired and thus holders of claims in those classes are therefore entitled to vote to accept or reject the Plan. Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

### 3.    Who Is **Not** Entitled to Vote

The following four types of claims are <u>not</u> to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code Section 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code Section 507(a)(1), (a)(2), and (a)(8) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4.    Who Can Vote in More than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for

the secured part of the claim and another ballot for the unsecured claims.

### 5.    Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed below in Section V.A.7.

### 6.    Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the allowed claims that actually voted, vote in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the allowed interest-holders of such class which actually voted, vote to accept the Plan.

### 7.    Treatment of Non-accepting Classes

As noted above, even if <u>all</u> impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner required by the Code. The process by which non-accepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown". The Code allows the Plan to be "crammed down" on non-accepting classes of claims or interests if it meets all consensual requirements except the voting requirement of Section 1129 (a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. §1129(b) and applicable case law.

**8.    Request for Confirmation Despite Non-acceptance by Impaired Class(es)**

The Plan Proponent asks the Court to confirm this Plan by cramdown on impaired classes if any of these classes do not vote to accept the Plan.

**B.    Liquidation Analysis**

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 Trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their right to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

In order for the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at lest as much under the Plan such holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains that this requirement is met here because creditors will receive much less than 100 % of their claims if the Debtor's assets are liquidated by a Chapter 7 Trustee and a distribution is made to creditors.

36

In a Chapter 7 case, a trustee is appointed and entitled to compensation from the bankruptcy estate in an amount not to exceed 25% of the first $5,000 of all moneys disburse, 10% on any amount over $5,000 but less then $50,000, 5% on any amount over $50,000 but not in excess of $1 million, and 3% on all amount over $1 million.

The only asset in this estate is the litigation described in Section II. A. above.   All creditors and interest holders will receive at least as much, if not more, under the Plan as the creditor or interest holder would receive under a Chapter 7 liquidation because there will be no extra layer of chapter 7 administrative expenses which would significantly reduce the amounts to be available for distribution to creditors.   Creditors will thus fair significantly better by choosing to accept this Plan.

C.       **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1.       *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date from proceeds of the litigation described in Section II. A. above.

2.       *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

There will be no further payments to creditors beyond what is distributed from the proceeds of the litigation described in Section II. A. above.   The Debtor will have no post-

37

confirmation operations. Creditors are referred to Section II. A. above describing the litigation which serves as the source of funding for this plan.

*You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.*

## VI.

## EFFECT OF CONFIRMATION OF PLAN

### A.     Discharge

Confirmation of this Plan does not discharge any debt provided for in this Plan, as the Plan provides for liquidation of all assets, the Debtor will not engage in business, post-confirmation, and the Debtor is not eligible for discharge in a Chapter 7 case. See 11 U.S.C. Section 1141(d)(3).

### B.     Continuation of Automatic Stay Pending Issuance of Discharge

Except as otherwise expressly provided for in the Plan or in the Confirmation Order, and to the fullest extent authorized or provided by the Bankruptcy Code, including §§ 105, 362 thereof, the entry of the Confirmation Order shall, provided that the Effective Date occurs, continue the automatic stay against all Persons that have held, currently hold, or may hold a Claim or other Debt or liability that is subject to the Plan from taking any of the following actions in respect of such Claim, Debt, or liability:  (a) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtor or Reorganized Debtor and his representatives, agents, and professionals; (b) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or Order against the Debtor or Reorganized

38

Debtor and his employees, representatives, agents, and professionals; (c) creating, perfecting, or enforcing in any manner directly or indirectly, any lien, security interest or encumbrance of any kind against the Debtor or Reorganized Debtor; (d) asserting any setoff, offset, right of subrogation or recoupment of any kind, directly or indirectly, against any Debt, liability, or obligation due to the Debtor or Reorganized Debtor; and (e) proceeding in any manner in any place whatsoever, including employing any process, that does not conform to, or comply with, or is inconsistent with the provisions of the Plan.

### C.    Revesting of Property in the Debtor.

Except as provided in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor.

### D.    Term of Injunctions or Stays and Injunction

Unless otherwise provided by Final Order of the Bankruptcy Court, all injunctions or stays provided for in the Chapter 11 case pursuant to Sections 105 or 362 of the Bankruptcy Code, or otherwise in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

Except as otherwise expressly provided in this Plan, all persons who have held, hold or may hold Claims, Debts or Equity Interests, are permanently enjoined on and after the Effective Date (a) from commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, Debt or Interest against the Debtor, or the Reorganized Debtor and his representatives, agents, and professionals, (b) from the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor, or Reorganized Debtor and his representatives, agents, and professionals, or the

39

property of the Debtor or Reorganized Debtor with respect to any such Claim, Debt or Interest, (c) from creating, perfecting or enforcing any encumbrance of any kind against the Debtor, or the Reorganized Debtor with respect to any such Claim, Debt or Interest, and (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due from the Debtor, the Reorganized Debtor or against any property of the Debtor or the Reorganized Debtor with respect to any such Claim, Debt or Interest.

### E.    Modification of Plan

The Proponent may modify the Plan at any time before confirmation.  However, the Court may require a supplemental disclosure statement and/or revoting on the Plan if Proponent modifies the Plan before confirmation.

The Proponent may also seek to modify the Plan at any time after confirmation so long as (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modification after notice and a hearing.  The Proponent further reserve the right to modify the treatment of any Allowed Claims at any time after the Effective Date of the Plan upon the consent of the Creditor whose Allowed Claim treatment is being modified, so long as no other Creditors are materially adversely affected.

### F.    Post-Confirmation Conversion/Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the case under Section 1112(b), after the Plan is confirmed, if there is a default in performance of the Plan or if cause exists under Section 1112(b).  If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate that has not been disbursed pursuant to the Plan will revest in the Chapter 7 estate, and the automatic stay

40

will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Court during this case.

### G.    Post-Confirmation Quarterly Fees

Quarterly fees pursuant to 28 U.S.C. Section 1930(a)(6) continue to be payable to the Office of the United States Trustee post-confirmation until such time as the case is converted, dismissed, or closed pursuant to a final decree.

### H.    Fractions of Cents

Notwithstanding any provision of this Plan to the contrary, no payments of fractions of cents will be made.  Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

### I.    Payment of Less then Ten ($10.00) Dollars

Notwithstanding any provisions in this Plan to the contrary, no payment shall be made on account of such an Allowed Claim, if a cash payment otherwise provided for in this Plan with respect to an Allowed Claim would be less than Ten Dollars ($10.00).

### J.    Setoff

The Disbursing Agent may, but shall not be required to, setoff against any Claim and the payment to be made pursuant to this Plan with respect to such Claim, claims of any nature whatsoever the Debtor or estate may have against the Claimant, but neither the failure to do so nor the allowance of a Claim hereunder shall constitute a waiver or release by the Chapter 11 estate or Reorganized Debtor of any claim it may have against the Claim Holder.

**K.    Time of Collection**

If a distribution check has not been presented to the bank upon which such check was drawn within ninety (90) days after the mailing of such check by the Disbursing Agent, of if a distribution check is returned to the Reorganized Debtor as undeliverable, the Disbursing Agent shall give such Creditor ten (10) days additional written notice at such Creditor's last known address of such fact.  If after the expiration of such ten (10) day notice period, calculated from the date of mailing of such written notice, the Creditor has failed to notify the Disbursing Agent of its Claim to the monies represented by such check, such unclaimed check shall be stopped, the monies represented by such check shall be returned to the Reorganized Debtor and such Claimant shall be treated under the Plan as if such Claim had been paid in full.

**L.    Disputed Parties**

In the event of any dispute between and/or among Claim Holders (including the person or person asserting the right to receive the disputed payment) as to such right of any person to receive or retain any payment to be made to such Claim Holders under this Plan, the Disbursing Agent may, in lieu of making such payment to such Claim Holders, make it instead into an escrow account for payment as ordered by a court of competent jurisdiction, or as the parties to such dispute may otherwise agree among themselves.

**M.    Headings**

The headings used in this Plan are inserted for convenience only and neither constitutes a portion of this Plan nor in any manner affect the provisions of this Plan.

N.      Severability

Should any provisions in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Plan.

O.      Reservation of Rights

The Debtor reserve the right, at any time, through Confirmation, to declare this Plan null and void, in which case it shall be so deemed. In such event, nothing contained in this Plan shall be deemed to constitute a binding contract by the Debtor or the Proponent of this Plan nor shall any statement herein or in the Disclosure Statement be used in any suit, action or proceeding outside this Chapter 11 case.

P.      Governing Law

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New Jersey.

Q.      Blank Ballots

Any ballot that is executed by the holder of an Allowed Claim or Interest but which does not indicate an acceptance or rejection of the Plan, shall be deemed to be an acceptance of the Plan.

R.      Binding Effect

Section 1141 of the Bankruptcy Code provides that the provisions of the Plan as confirmed shall bind the Debtor, any entity issuing securities under the Plan, any entity acquiring property under the Plan and any Creditor of the Debtor, whether or not the Claim of such

43

Creditor is impaired under the Plan, and whether or not such Creditor has accepted the Plan.  In addition to the foregoing, all Creditors accepting the Plan shall be deemed to have waived and forever released all Claims against the Debtor and Reorganized Debtor.

### S.      Releases

The rights afforded in the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims or interests of any nature, kind or character whatsoever (known or unknown) against the Debtor, its estate or any of its assets or properties and its current employees, representatives, agents, and professionals and except as otherwise provided herein, upon discharge, all Claims against or interests in the Debtor shall be deemed satisfied, discharged and released in full; and except as specifically provided in the Plan, all Claimants shall be forever precluded from asserting against the Debtor or their assets or properties, any further Claim or interest which such holder now has, ever had, or may hereafter accrue, based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.

### T.      Computation of Time Periods

In computing any period of time prescribed or allowed by this Plan, the date of the act or event from which the designated period begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, Sunday or legal holiday, in which

event the period shall run to the end of the next business day.

**U.    Successors or Assigns**

The duties, rights and obligations of any person or entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of said person and the successors and/or assigns of such person.

**V.    Plan Controls**

In the event, and to the extent that any provision of this Plan is inconsistent with any other document addressing claims of creditors, the provisions of this Plan shall control and take precedence.   In the event of any inconsistency between any provisions in the Plan and any provision of the Confirmation Order, the Confirmation Order shall control and take precedence.

**W.    Debtor' Professionals**

Upon confirmation, the Debtor' Professionals shall continue to provide services, to the extent necessary, to the Reorganized Debtor and shall receive compensation for such services at their normal hourly rates.

**X.    U. S. Trustee's Fees**

Quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) continue to be payable to the Office of the United States Trustee post-confirmation until such time as the case is converted, dismissed, or closed pursuant to a final decree.

**WALSH SECURITIES, INC.**
Debtor-in-Possession and Plan Proponent

By:_____
     ROBERT WALSH

Dated: October 17, 2011

45