# GOLDENBERG, MACKLER, SAYEGH, MINTZ, PFEFFER, BONCHI & GILL

HARRY A. GOLDENBERG (1938-2003)
KENNETH D. MACKLER\*\*\*
JOSEPH ERAN SAYEGH\*\*
LAWRENCE A. MINTZ\*\*\*
MARK PFEFFER\*\*
KEITH A. BONCHI
MICHAEL A. GILL\*\*\*\*
MICHAEL J. MACKLER\*\*
HOWARD J. HEALD
ALLISON E. WEINER
FRANCIS J. BALLAK
LAUREN E. TYLER
NANCY MARTELLIO
DANIEL G. TRACY
JOEL M. CHIPKIN\*\*
RACHELLE J. ARMBRUSTER

CERTIFIED BY THE SUPREME COURT OF
NEW JERSEY IN THE FOLLOWING AREAS
\*\*   CIVIL TRIAL LAW
\*\*\*  WORKERS' COMPENSATION LAW
\*\*\*\* MATRIMONIAL LAW

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
660 NEW ROAD, SUITE 1A
NORTHFIELD, NEW JERSEY 08225
http://www.gmslaw.com
TAX ID #22-1980737
---------
(609) 646-0222
FAX (609) 646-0887

kbonchi@gmslaw.com

September 6, 2012

ATLANTIC CITY OFFICE
1030 ATLANTIC AVENUE
ATLANTIC CITY, NJ 08401
(609) 344-7131
FAX
(609) 347-6024

RIO GRANDE OFFICE
THE HERALD BUILDING
1508 ROUTE 47 SOUTH, SUITE 3
RIO GRANDE, NJ 08242
(609) 886-4333
FAX
(609) 886-9441

VINELAND OFFICE
110 N. 6TH STREET
VINELAND, NJ 08360
(856) 839-0953
FAX
(856) 839-0959

PLEASE REPLY TO
NORTHFIELD

VIA CM/ECF & EMAIL: chambers_of_nlw@njb.uscourts.gov

Hon. Novalyn L. Winfield, U.S.B.J.
U.S. Bankruptcy Court District of New Jersey
M.L. King, Jr. Federal Bldg. & U.S. Courthouse
50 Walnut St., 3rd Floor, P. O. Box 1352
Newark, NJ  07101-1352

RE:   **Walsh Securities, Inc.**
      **Chapter 11 Docket No. 10-44845-NLW**
      **Our File No. 52804-28**

Dear Judge Winfield:

As you are aware, I represent the creditor, Cherokee Equities, LLC (hereinafter "Cherokee"), in the above captioned matter. This matter is scheduled for a telephonic conference on Tuesday, September 25, 2012 at 2:00 p.m. As you are further aware, Cherokee has a motion pending to dismiss the bankruptcy.

As I have indicated to the court on several occasions, my client has been in direct communication with Robert Walsh in an attempt to resolve the various issues between them. One of the goals of the parties was to eliminate the need for this bankruptcy which has caused both sides to incur significant legal fees.

I enclose for your review a copy of a Standstill Agreement entered into between Cherokee Equities, LLC and Walsh Securities, Inc. subject to the Bankruptcy Court dismissing the bankruptcy so it may come into effect. A review of same will disclose that if the bankruptcy is dismissed, Cherokee has agreed that it will not take any action to interfere with the RICO litigation other than to secure its levy and that it be paid any monies that are still due and owing to it from the RICO recovery.

Hon. Novalyn L. Winfield, U.S.B.J.
September 6, 2012
Page 2

In light of the above, I respectfully request that the Bankruptcy Court dismiss the bankruptcy since the Standstill Agreement no longer requires that a bankruptcy stay be in effect. Furthermore, as previously indicated, this was negotiated between my client and Robert Walsh directly, and Mr. Walsh executed same as President of Walsh Securities, so it is clear that both parties desire to have this bankruptcy dismissed.

Thank you for your courtesy and cooperation.

                    Respectfully yours,

                    /s/ Keith A. Bonchi

                    KEITH A. BONCHI

KAB:jab
cc:    Daniel Stolz, Esquire (via CM/ECF and email: dstolz@wjslaw.com)
       United States Trustee (via CM/ECF and first class mail)
       Jay Wolfkind (via email)

# Standstill Agreement
Walsh Securities, Inc. & Cherokee Equities, LLC

Cherokee Equities, LLC, (hereinafter "Cherokee") and Walsh Securities, Inc. ("WSI") enter into this Standstill Agreement (the "Agreement") subject to: (A) the provisions herein; (B) the approval of the United States Bankruptcy Court; and (C) the dismissal of the "WSI bankruptcy" described herein.

**WHEREAS,** WSI is indebted to Cherokee as per a certain Promissory Note dated July 6, 2007 (the "Note"); and

**WHEREAS,** WSI defaulted on the Note, and Cherokee subsequently obtained a judgment against WSI in April, 2010, and has since perfected a levy on all WSI assets; and

**WHEREAS,** Cherokee had been pursuing actions to enforce its judgment against WSI, which caused WSI to file Chapter 11 bankruptcy (Walsh Securities, Inc., Docket 10-44845) under the U.S. Bankruptcy Code on November 9, 2010 (the "WSI bankruptcy"); and

**WHEREAS,** the only reason WSI filed the WSI bankruptcy was to stay Cherokee from continuing its enforcement actions against WSI pursuant Cherokee's aforesaid judgment/levy, which inhibited WSI's ability to pursue its "RICO litigation" action (Case 2:97-cv-03496-DRD-MAS) in federal court to an orderly conclusion; and

**WHEREAS,** the WSI bankruptcy has caused both Cherokee and WSI to incur significant legal fees; and

**WHEREAS,** Cherokee and WSI have now agreed to enter into this Standstill Agreement, wherein Cherokee will suspend enforcement activities against WSI, and will allow WSI to complete the RICO litigation, with the express understanding that until all of the monies owed to Cherokee are paid, Cherokee will be allowed to continue its levy on WSI and any RICO proceeds, and that if/when any monies are received by WSI from any source or any reason, including the RICO litigation, Cherokee will be paid in full ahead of anyone except the items and issues described in Clauses 5 and 6 herein; and

**WHEREAS,** Cherokee has agreed to enter this Standstill Agreement, subject to compliance by WSI and its officers with all of the provisions hereof.

IT IS on this 5TH day of AUGUST, 2012, **AGREED AS FOLLOWS:**

1. Robert Walsh, President of WSI, shall instruct the attorneys representing WSI to immediately and unconditionally dismiss the WSI bankruptcy.

2. Cherokee shall cease enforcement activities on its judgment against WSI, and shall take no action to obstruct or hinder WSI's operations or the RICO litigation. Cherokee shall "Stand Still" and allow WSI to complete the pending RICO lawsuit in an orderly manner that maximizes the net recovery to WSI and its creditors including Cherokee. However, Cherokee shall continue to hold its lien/levy on WSI, and may reaffirm said levy on WSI and the RICO lawsuit proceeds. Cherokee shall be allowed to enforce its judgment/lien/levy on any proceeds that are paid to WSI as a result of Cherokee's levies, to the full extent permitted by law.

3. Robert Walsh shall provide Cherokee with confidential monthly summary reports regarding WSI and its RICO litigation, by email or fax, and will otherwise promptly notify Cherokee of any material developments or other potential revenue events.

4. WSI, and Robert Walsh personally, do hereby absolutely and forever, with prejudice, acknowledge and agree that they do not have any defenses, claims or offsets of any kind regarding the Judgment or any other aspect of Cherokee's litigation associated with enforcement and collection of the July 2007 Note. This provision will survive the termination of this Agreement for any reason.

5. WSI and Cherokee acknowledge that WSI's RICO litigation attorney (Robert Magnanini, Esq. of Stone & Magnanini) has a priority attorney contingency claim relative to WSI's RICO litigation (the "Magnanini Contingency"). WSI and Robert Walsh believe the Magnanini Contingency liability is Thirty-Five (35%) Percent of any RICO recovery.

6. WSI believes the total cost of the RICO prosecution, in addition to the Magnanini Contingency, will not exceed an amount confidentially communicated to Cherokee by WSI. The Magnanini Contingency, plus all other direct, necessary RICO litigation costs, which includes experts, are herein the "RICO litigation costs".

7. WSI believes there are no material past/pending expenses that lien on the RICO proceeds or WSI ahead of Cherokee except the "RICO litigation costs".

8. Subject to the WSI bankruptcy being dismissed, WSI and Robert Walsh reaffirm that net of RICO litigation costs, Cherokee will be paid in full before any other distributions.

9. WSI shall instruct its attorneys to honor any levies that Cherokee places upon them, and after the RICO litigation costs are paid, Cherokee's remaining claim will be paid in full. WSI shall take no action to object to Cherokee's levies, and shall instruct its attorneys to honor said levies as set forth herein.

10. The parties will disclose the terms of this Standstill Agreement to the Bankruptcy Court to induce it to dismiss the pending WSI bankruptcy.

**Walsh Securities, Inc.**

_____
By: Robert Walsh, President
(subject to dismissal of the WSI bankruptcy)

_____
**Robert Walsh**, as Guarantor

**Cherokee Equities, LLC**

_____
By: Jay Wolfkind, Co-Managing Member
(subject to dismissal of the WSI bankruptcy)

_____
**Lorraine Walsh**, as Guarantor